ATTORNEY FOR APPELLANT
Leanna Weissman
Lawrenceburg, Indiana

ATTORNEYS FOR APPELLEE
Steve Carter
Attorney General of Indiana

Jodi Kathryn Stein
Deputy Attorney General
Indianapolis, Indiana

# In the
# Indiana Supreme Court

_____

No. 15S01-0606-CR-231

NATHAN HAAS,

*Appellant (Defendant below),*

v.

STATE OF INDIANA,

*Appellee (Plaintiff below).*

_____

Appeal from the Dearborn Circuit Court, No. 15C01-0208-FA-002
The Honorable James D. Humphrey, Judge

_____

On Petition to Transfer from the Indiana Court of Appeals, No. 15A01-0405-CR-212

_____

**June 27, 2006**

**Shepard, Chief Justice.**


Appellant Nathan Haas challenges his twenty-year sentence for conspiracy to commit burglary, imposed following a guilty plea. He says it violates his Sixth Amendment rights as outlined in Blakely v. Washington. A sufficient number of the aggravating circumstances require proof to a jury that we are unable to say with confidence that the sentence is an appropriate one. We remand with directions to afford the State a chance to prove those

1

aggravators, or for imposition of a sentence of twelve years, that level of enhancement warranted by the other aggravating circumstances standing by themselves.

## Facts and Procedural History

On the night of August 5, 2002, Nathan Haas and three others (David Fields, Mike Green, and Bryan Allen) went to the residence of Judith and Larry Pohlgeers with burglary in mind. Green and Fields broke into the home through a back door, and attacked the Pohlgeers, hitting the elderly couple several times with a pipe brought along by Fields. Green and Fields searched a dresser in the Pohlgeers' bedroom before leaving the house. Haas and Allen watched the burglary from the back door but did not enter the home.

The police investigation eventually focused on Haas and Green, partly because the police learned that the two had participated in a previous, unreported burglary of the home in 2000 during which money was stolen from the same dresser searched in the August 2002 burglary. Haas admitted his involvement in the 2002 burglary to the police, and the State charged him with burglary, two counts of aggravated battery, and conspiracy to commit burglary.

On January 10, 2003, Haas pled guilty to an amended conspiracy charge as a class B felony in exchange for having the other charges dropped. The trial court found several aggravating circumstances and sentenced Haas to twenty years imprisonment, ten years above the presumptive term for class B felonies.

Haas appealed, arguing that his sentence violated his Sixth Amendment rights as articulated in Blakey v. Washington, 542 U.S. 296 (2004). He also contended that the trial court wrongly considered certain aggravators, failed to consider mitigating circumstances, and imposed an inappropriate sentence in light of the nature of the offense and character of the offender.

The Court of Appeals rejected these arguments and affirmed. Haas v. State, No. 15A01-0405-CR-212 (Ind. Ct. App. Feb. 28, 2005) vacated. We grant transfer because several of the

2

aggravators used to enhance his sentence were improper. We remand to the trial court for imposition of a new sentence.

At the sentencing hearing the judge found four discrete, significant, aggravating factors. Those factors were the "substantial risk that the defendant will commit future crimes," the heinous "nature and circumstances of the crime," that the victims were over the age of sixty-five, and Haas' juvenile record. We address the propriety of each of these aggravators in turn.

## I. Some Aggravators Relating to Weight Are Permissible

Judicial statements characterized as aggravators do not always constitute "facts" that need to be found beyond a reasonable doubt. Morgan v. State, 829 N.E.2d 12, 17-18 (Ind. 2005). Rather, such statements "merely describe the moral or penal weight of actual facts." Id. at 17. Such statements may serve as valid and separate aggravators so long as they are "1) supported by facts otherwise admitted or found by a jury and 2) meant as . . . concise description[s] of what the underlying facts demonstrate and therefore relies upon a legal determination otherwise reserved as a power of the judge." Id. at 18.

In this case, the "substantial risk" and "nature and circumstances" aggravators fall into the broader category of statements "meant as . . . concise description[s]" of the facts related to the crime. The propriety of these aggravators is appropriately challenged because, for the most part, they rely on underlying facts not properly found or are in some other way improper.

A. Substantial Risk Aggravator Not Permissible. The judge found there was a "substantial risk" that Haas would engage in future criminal activity. This aggravator was based on two underlying facts, Haas' "extensive" juvenile record and the "nature and circumstances of the crime." (Appellant's App. at 358.) Ordinarily it would be appropriate for the substantial risk aggravator to be supported by the criminal history, or possibly some fact underlying the nature

3

and circumstances aggravator. However, in this case these facts also served as distinct aggravators or supported another aggravator.

Judicial statements describing the moral and penal weight of the underlying aggravating circumstances cannot serve as "separate aggravating circumstances." Morgan, 829 N.E.2d at 17. As we explained in Trusley v. State, that limitation applies when the court tries to enhance a sentence based on both the underlying fact and the judicial statement, rather than using the judicial statement on its own to describe the weight of the underlying fact. 829 N.E.2d 923, 927 (Ind. 2005).

In this case, the trial court's sentencing order clearly indicates that it considered both the fact of the prior convictions and the underlying facts of the nature and circumstances aggravator as well as statements regarding the weight of those facts to be separate aggravators. This is not permissible, and the "substantial risk" aggravator was therefore not a proper basis for enhancement, unless found by a jury.

B. The Nature and Circumstances Aggravator Permissible in Part. The "nature and circumstances" aggravator was based on several distinct underlying facts. Those facts included the age of the victims, that the conspirators, "through planning and lying in wait," knew the Pohlgeers were home at the time of the burglary, that the conspirators engaged in extensive planning that included the carrying of weapons in committing the crime, that Haas had knowledge of the residence and its occupants gained through participation in a previous burglary of the same house, and that the conspirators attempted a "dry-run" of the robbery.

Several of these facts were neither found by a jury nor admitted by the defendant. As for Haas' alleged involvement in a previous robbery, he denied that he had participated in any such event. (T.R. 86, 142.)[1] Although Haas admitted that the Pohlgeers' were an "elderly couple"

---

[1] At the sentencing hearing Kip J. Main, a Trooper Detective of the Indiana State Police stated that Haas had "admitted [to] being involved in the burglary in 2000" during an interview. (T.R. 130.) However, the record contains the transcript of only one interview of Haas by Main. Nowhere in that interview does Haas indicate his

4

(T.R. 93), there is no indication that Haas ever admitted that he "knew the victims to be senior citizens in excess of sixty-five (65) years of age." (Appellant's App. at 359.)[2] Likewise, though Haas said in his statement to police that he was aware the Pohlgeers were home at the time of the burglary, he never admitted this fact before the court as part of the factual basis of his plea agreement, nor did he make such a statement during his testimony at the sentencing hearing. (See Appellant's App. at 236-37; T.R. 14-16, 65-96, 142-46.) As the existence of these facts was never properly established they cannot support the enhanced sentence.

During his testimony at the sentencing hearing, Haas downplayed his role as a planner of the burglary, suggesting that he was largely a passive participant in the conspiracy. In essence, he implied that his "planning" consisted of agreeing to the plan established by other members of the conspiracy. (T.R. 73-74, 76, 92, 94.) Hass also denied staking out the Pohlgeers' residence before the burglary and claimed that the police had "misinterpreted" his statement regarding a visit to the Pohlgeers' neighborhood the night before the burglary. (T.R. 88-89, 95.) He also denied any involvement in "dry-runs" of the burglary. (T.R. 91.) On this last point we agree with Haas. Although some evidence strongly suggests that Haas did, in fact, participate in a dry run (See T.R. 112), Haas himself nowhere admits this fact before the court. Consequently, as this fact was never properly found, it cannot support the aggravator.

On the other hand, in accepting the factual basis of his plea, Haas admitted to scoping out the Pohlgeers' residence on two different occasions and knowing that a weapon had been brought to the house by one of his co-conspirators. (T.R. 14-16.) Counsel rightly acknowledges Haas' admission of these facts. (Br. Appellant at 7.) As they were properly found, the court could consider these facts, and they are sufficient to support the description of the crime as "heinous" in nature.

---

participation in that burglary. (Appellant's App. at 234-56.) In the absence of a proper admission, or a determination by a judge during trial, this fact cannot be considered established for Blakely purposes.

[2] The only indication that the Pohlgeers were over sixty-five was testimony to that effect by witnesses for the State, including Judith Pohlgeer. Although one can ordinarily be assured that a witness knows her age and states it truthfully and accurately, Blakely requires a higher standard of proof if that fact is used to elevate a sentence beyond the statutory maximum. Such is the Blakely world we live in.

Haas argues that the fact he "staked out" the residence and that he knew a weapon was being brought by a co-conspirator were improperly considered as aggravators because they are elements of the crime to which he plead guilty. He is right insofar as they were the actions identified in the charging information as the acts taken in furtherance of the conspiracy, and that there is a general prohibition on using elements of a crime to support an enhanced sentence. Lemos v. State, 746 N.E.2d 972, 975 (Ind. 2001). However, the trial court did not enhance the sentence because an overt act was taken, but rather found that the nature and circumstances of the crime were heinous, at least in part, because of the type of planning Haas and his confederates engaged in and what it said about the particular crime and the moral and penal culpability of the defendant. Such differentiation makes permissible the consideration of those facts for the purposes of sentencing. Id.

The difference between the two reasons for imposing the enhancement is more than semantic. It explains the purpose of aggravating sentences — to impose a punishment that is appropriate to the particular crime and criminal. A different example may help to illustrate this point. It would certainly be improper for a judge to enhance a sentence for assault because the defendant was found to have hit someone, since the fact of the physical blow is an element of the crime. A judge might conclude, however, that the nature and circumstances of the assault warranted an enhanced sentence if it was also properly established that the defendant repeatedly struck the victim with a crowbar. In the first instance, the defendant would be receiving an enhanced term simply for committing a crime; in the second the defendant would receive additional punishment because of higher moral culpability reflected in the manner in which the crime was committed.

Similarly, while a judge may not impose an enhanced sentence simply because a conspirator took a step in furtherance of the conspiracy, it would be appropriate to hold the defendant accountable when such acts are especially repugnant. Such is the case here where the nature of the planning and the steps taken by Haas and the conspirators to carry out their plan demonstrate a particularly high degree of purposefulness.

Because the fact that he "scoped out" the residence, and the fact that he knew a weapon would be involved were admitted by Haas, and because they support an aggravator meant to describe their moral and penal weight, the use of the "nature and circumstances" aggravator is permissible to the extent it relies solely on these facts. Because the other facts supporting the aggravator were improperly found or considered, however, its weight is significantly reduced.

## II. Remaining Aggravators

The remaining aggravators found by the judge are the age of the victims and Haas' criminal record. As we explained above, although virtually certain, the age of the victims was never properly found and cannot serve as a valid aggravator.

Haas challenges the use of his criminal record on the grounds that because it consists solely of juvenile adjudications that were not subject to the same procedural safeguards as an adult criminal trial, it is not included in the exception outlined in Apprendi v. New Jersey, 530 U.S. 466 (2000), for prior criminal convictions. We recently addressed an identical challenge in Ryle v. State, 842 N.E.2d 320, 321-23 (Ind. 2005), holding that juvenile adjudications were included in the Apprendi exception and could be considered by a court in sentencing a defendant despite there being no jury trial in juvenile adjudications. Therefore, the trial court could consider Haas' juvenile record.

Haas also challenges the weight assigned to this aggravator. Haas accurately observes that in assigning weight to a defendant's criminal history, a trial court must "consider the chronological remoteness of the convictions as well as the gravity and nature of the prior crime." As we ourselves have recently emphasized "sentencing judges [and] appellate judges [may not fail to think] about what weight to give a history of prior convictions." Morgan, 829 N.E.2d at 15. A sentencing court must assess a defendant's criminal history with the recognition that the weight assigned to that history "'varies based on the gravity, nature and number of prior offenses as they relate to the current offense.'" Id. (quoting Wooley v. State, 716 N.E.2d 919, 929 n.4 (Ind. 1999)).

Haas' juvenile history consists of two adjudications for theft, one for the conversion of a relative's car, one for the theft and unauthorized use of a relative's car, and one for battery. (Appellant's App. at 320-21.) The charges related to the motor vehicles were apparently minor in nature, and in regards to the unauthorized used charge, the theft count may never have been adjudicated on the merits. (T.R. 23-24, 28, 80-82; Br. Appellant 12.) This does not excuse Haas' behavior, of course, but it does indicate that these incidents are of modest weight. The two remaining thefts suggest a pattern of behavior that directly relates to the decision to enter into the conspiracy to commit burglary, though these seem to have been petty thefts. (T.R. 82-83.) Collectively, these appear to warrant some weight as aggravators.

**Conclusion**

At the end of the day, certain aggravators that support this sentence may be found only by a jury and those that a judge may find are such that we are unable to say with confidence that a maximum sentence is appropriate. We therefore remand to the trial court to allow the State, at its election, to prove the Blakely aggravators to a jury consistent with our decision today in Neff v. State, No. 12S02-0606-CR-232 (Ind. June 27, 2006); __ N.E.2d __ (Ind 2006). Should the State decide to waive the opportunity, we direct the trial court to revise Haas' sentence to twelve years.

**Dickson, Sullivan, Boehm, and Rucker, JJ., concur.**