Joshua **MEADOWS**, Appellant–
Defendant,

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A04–0601–CR–43.

Court of Appeals of Indiana.

Sept. 15, 2006.

Bruce E. Andis, Esq., Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Scott L. Barnhart, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Defendant, Joshua Meadows (Meadows), appeals the trial court's imposition of his sentence for Counts I and II, being a serious violent felon in possession of a firearm, Class B felonies, Ind.Code § 35–47–4–5 and Count III, false informing, as a Class B misdemeanor, I.C. § 35–44–2–2.

We affirm.

### ISSUE

Meadows raises one issue on appeal, which we restate as follows: Whether Meadows' sentence is appropriate in light

of the nature of the offense and character of the offender.

## FACTS AND PROCEDURAL HISTORY

In the summation of the facts and procedural history, we cite from our prior decision in *Meadows v. State,* 785 N.E.2d 1112, 1115–17 (Ind.Ct.App.2003), *trans. denied.* In 2001, Meadows purchased two firearms. On April 23, 2001, he purchased an SKS rifle from an Indianapolis gun dealer. When Meadows went to purchase the SKS, he was accompanied by Allen Dumperth (Dumperth), who had been convicted of robbery and could not legally possess a firearm.[1] Meadows filled out the necessary paperwork for the purchase to take place, and the store clerk performed the required background check. Meadows left the store after the sale was put on "delay" status pending a further review by the FBI before the sale could be completed. Meadows and Dumperth returned to the store three days later to pick up the SKS after Meadows learned that he had passed the background check. Meadows acknowledged that on several occasions, he and Dumperth shot the SKS for target practice.

On August 22, 2001, Meadows, at the urging of Dumperth, purchased a second firearm from a different dealer. Meadows decided to purchase an AK–47 rifle and paid for it with money that he had received from Dumperth. Once again, Meadows filled out the necessary paperwork for the background check to be conducted. Again, the sale was put on "delay" status and Meadows and Dumperth left the store. They returned to pick up the AK–47 a few hours later after Meadows was informed that the background check had been completed.

Sometime shortly after Meadows purchased the AK–47, he gave it to Dumperth. Meadows claimed that he asked Dumperth to return the AK–47, but that Dumperth refused, saying that the AK–47 belonged to him. On September 12, 2001, Dumperth asked Meadows whether he could borrow the SKS for the purpose of target shooting. Meadows gave him the SKS, thus giving him possession of both of Meadows' firearms.

On September 17, 2001, Dumperth was involved in a police chase and shooting in which Deputy Jason Baker of the Marion County Sheriff's Department (Deputy Baker) was shot and killed and a bystander was seriously injured. Dumperth also died during the shootout. Both the SKS and the AK–47 which belonged to Meadows were used in the shooting. The AK–47 was recovered in Dumperth's automobile, and the SKS was found a short distance from where Dumperth's automobile had crashed. Meadows was not personally involved in the shooting and was not in Dumperth's automobile during the chase.

Meadows learned that Dumperth had been involved in the shooting and, on September 18, 2001, called 911 to report that his firearms had been stolen. Deputy Thomas George of the Marion County Sheriff's Department went to Meadows' apartment to fill out a report. On September 20, 2001, Meadows again called 911 and stated that he believed that his firearms may have been used in the shooting of Deputy Baker. At that time, Deputy Charles Smith (Deputy Smith) was dispatched to Meadows' apartment. Deputy Smith met with Meadows, but did not question Meadows about the firearms because he was instructed by Detective–Sergeant Douglas Scheffel of the Marion County Sheriff's Department (Sergeant

---

**1.** Indiana Code section 35–47–4–5 prohibits the knowing or intentional possession of a firearm by an individual who has been convicted of robbery.

Scheffel) that he was to only "make small talk." (Transcript p. 160). Sergeant Scheffel informed Deputy Smith that he and Detective–Sergeant Mike Perkins (Sergeant Perkins) would come to Meadows' apartment to interview him.

After arriving at Meadows' apartment, Sergeant Scheffel and Meadows sat in Sergeant Scheffel's car so that some preliminary information could be gathered about Meadows and the purported theft. Meadows then accompanied Sergeant Scheffel and Sergeant Perkins to the Sheriff's Department where he was interviewed in more detail for the purpose of making a taped statement. Sergeant Scheffel was joined by Detective–Sergeant Paul Arkins of the Indianapolis Police Department who was on special assignment to the Bureau of Alcohol, Tobacco and Firearms. Meadows confessed that he had lied about the firearms being stolen and admitted that he had given them to Dumperth. Meadows was then advised of his Miranda rights and subsequently signed the advisement of rights form and a waiver of those rights prior to giving a taped statement.

On March 4, 2002, prior to the commencement of the jury trial, the State filed an Amended Information, charging Meadows with Counts I and II, being a serious violent felon, Class B felonies, I.C. § 35–47–4–5 and Count III, false informing, as a Class B misdemeanor, I.C. § 35–44–2–2. On March 4 through March 6, 2002, a jury trial was held. At the close of the evidence, the jury returned a guilty verdict on all charges. On April 10, 2002, during a sentencing hearing, the trial court sentenced Meadows to twenty years each on Counts I and II, to be served consecutively, and 180 days suspended on Count III, to be served concurrently to the sentences on Counts I and II.

Meadows appealed. On June 23, 2003, we issued our opinion in *Meadows v. State*, 785 N.E.2d 1112, ¹1128 (Ind.Ct.App.2003), *trans. denied*, affirming the conviction but remanding for resentencing. On September 9, 2003, the trial court conducted a resentencing hearing and sentenced Meadows again to twenty years each on Counts I and II, to be served consecutively, and 180 days suspended on Count III, to be served concurrently to the sentences on Counts I and II. During the hearing, the trial court issued the following sentencing statement:

In sentencing [Meadows], the [c]ourt has considered the factors made mandatory by statute as follows: The risk that [Meadows] will commit another crime, I don't recall specifically what I said at the original sentence, but I know what I generally think as to this factor and that is that it's difficult to predict what a defendant will commit in the future, if any crimes. And I still say that as it relates to [Meadows], if he allows himself to be influenced by other individuals who have criminal backgrounds then I think the risk is there that he will commit another crime. He appears to be on the road though, based on what he's told me he's been doing in prison and hopefully that when he gets out that he will no longer be under those influences and the risk will be minimal. The [c]ourt had also considered the nature and the circumstances of the crime committed. As I considered back in April of 2002, and I will talk more about those later. The [c]ourt has also considered [Meadows'] prior criminal record, character and condition as well—and as incorporated by the evidence presented by [Meadows' counsel] and [Meadows] back on April the 10th of 2002. The [c]ourt is going to find as mitigating [Meadows'] young age at the time of these crimes. The [c]ourt will also find as mitigating his minimal criminal history. However,

the [c]ourt's going to give that minimal weight because he did, in fact, have several run-ins with the law in his young age, and he also had a true finding for theft as a juvenile. As to his remorse, the [c]ourt will consider that as a mitigator as well. However, as always when it comes to remorse, it's difficult to tell the sincerity of any individual as to whether or not he shows true remorse. But nevertheless, the [c]ourt will find that as a mitigator. As an aggravating circumstance, in this case, the [c]ourt's going to find the nature and the circumstances of the crime committed—and specifically that [Meadows] aided [Dumperth] in possession—possessing a firearm. He knew that [Dumperth] was a felon at the time that he aided him in possessing this firearm and that firearm was subsequently used during a police chase and a shooting, and the [c]ourt believes that based on those circumstances that is an aggravating circumstance. The [c]ourt will also consider as an aggravating circumstance the nature of the weapons used in this case and specifically the capability of those weapons. And that's what I'm talking about, those weapons, as testified to in [c]ourt could travel—the bullets from those weapons would travel up to 1500 feet and the capability of those types of weapons played a significant role in the death of Deputy Jason Baker as well as the innocent bystander who is wounded—wounded for life and has changed his life forever. The [c]ourt believes that those aggravating circumstances— those two outweigh the mitigating circumstances in this case....

(Re-sentencing Transcript pp. 21–24)

On January 12, 2006, Meadows filed a Motion to File a Belated Notice of Appeal pursuant to Post–Conviction Rule 2(1), which, after a hearing, was granted by the trial court.

Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

Meadows now contends that his sentence is inappropriate in light of the nature of the offense and character of the offender and requests this court to revise his sentence pursuant to Ind. Appellate Rule 7(B). Pursuant to this rule, we may revise a sentence authorized by statute, if after due consideration of the trial court's decision, we find that the sentence is inappropriate in light of the nature of the offense and the character of the offender. *See* Ind.Appellate Rule 7(B).

■ Initially, we note our disagreement with the State's assertion that Meadows is not entitled to a retroactive application of *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). Here, Meadows filed a belated notice of appeal pursuant to Post–Conviction Rule 2, which was granted by the trial court. Recently, we analyzed this issue in another belated appeal case and "conclude[d] that *Blakely* applies retroactively because [the defendant's] case was not yet final when *Blakely* was decided." *Boyle v. State,* 851 N.E.2d 996, 1006 (Ind.Ct.App.2006). Similarly, we conclude that in Meadows' case, the availability of appeal via Post–Conviction Rule 2(1) had not yet been exhausted when *Blakely* was announced, and therefore *Blakely* must be given retroactive effect. *Id.* In reaching this conclusion we echo the concerns voiced in *Boyle,* noting that the retroactive application of *Blakely* is likely to have a "highly detrimental effect on the administration of justice," and that it would wreak "havoc" on trial courts across the country. *Id.* Because of our Supreme Court's ruling in *Blakely,* many defendants will pursue a belated appeal and challenge their enhanced sentences "on the basis of a

rule that was not the law when they were convicted [and] could not have been anticipated when they were sentenced." *Id.* Accordingly, we reaffirm that "[u]nless and until the U.S. Supreme Court revises or clarifies its rules on retroactivity, however, we are bound to consider the merits of belated *Blakely* appeals where appropriate." *Id.*

In the instant case, Meadows was charged with two Counts of possession of a firearm by a serious violent felon, Class B felonies, and one Count of false informing, a Class B misdemeanor. The presumptive sentence [2] for a Class B felony is ten years, with not more than ten years added for aggravating circumstances and not more than four years subtracted for mitigating circumstances. I.C. § 35–50–2–5. Furthermore, "[a] person who commits a Class B misdemeanor shall be imprisoned for a fixed term of not more than one hundred eighty (180) days ..." I.C. § 35–50–2–3. Here, finding that the aggravating factors outweighed the mitigating circumstances, the trial court imposed an aggravated sentence of twenty years each on the two Counts of possession of a firearm by a serious violent felon, to be served consecutively, and 180 days suspended on one Count of false informing, to be served concurrently to the sentences on the possession Counts.

When considering the appropriateness of the sentence in light of the nature of the offense and character of the officer, our supreme court has explained that "[t]his formulation places central focus on the role of the trial judge, while reserving for the appellate court the chance to review the matter in a climate more distant from local clamor." *Serino v. State*, 798 N.E.2d 852, 856–57 (Ind.2003). In this regard, we have noted that even though a trial court may have acted within its lawful discretion in determining a sentence, Article 7 § 4 of the Indiana Constitution authorizes an independent appellate review of the imposed sentence whereby Indiana Appellate Rule 7(B)—inappropriateness of the sentence in light of the nature of the offense and the character of the offender—articulates a standard of review designed as guidance for appellate courts. *See Childress v. State*, 848 N.E.2d 1073, 1080 (Ind.2006); *Buchanan v. State*, 767 N.E.2d 967, 972 (Ind.2002).

In the instant case, Meadows was convicted of two Counts of being a serious violent felon in possession of a firearm based upon his actions of aiding Dumperth in possessing the firearms. Thus, because Meadows was convicted of a crime which was actually committed by Dumperth, all acts by Dumperth which involved the use of the firearms are relevant to Meadows' sentencing as they are inextricably linked to the fact that Meadows put the guns in the hands of Dumperth knowing him to be a convicted felon. *See Meadows*, 785 N.E.2d at 1127.

With regard to the nature of the crime, this one is particularly heinous. Meadows, by purchasing and lending his weapons to Dumperth, put in motion a horrific series of events in which one police officer lost his life and an innocent citizen is incapacitated for life. Even though Meadows was aware of Dumperth's criminal history as a felon and knew what he was capable of, Meadows nevertheless acquiesced to Dumperth's requests to borrow both assault weapons. Subsequently, Dumperth used these lethal weapons, leading Deputy Bak-

---

**2.** Public Law 71–2005, abolishing "presumptive sentences" in favor of "advisory sentences," is not applicable in the instant case since its effective date was April 25, 2005, whereas the commission of the offense for this case was prior to April 25, 2005. *See Richards v. State*, 681 N.E.2d 208, 213 (Ind. 1997).

er into a police chase that would result in his cold-blooded murder and the serious wounding of an innocent bystander. As we stated before, when a perpetrator commits the same offense against multiple victims, "enhanced and consecutive sentences seem necessary to vindicate the fact that there were separate harms and separate acts against more than one person." *Serino*, 798 N.E.2d at 857.

In light of Meadows' character, we observe that although Meadows has a criminal history, the trial court appeared to trivialize its content. We refuse to do so. Turning to his criminal history, Meadows, besides several run-ins with the law that did not result in charges, has a true finding as a juvenile that would have been theft, as a Class D felony, if committed by an adult. As pointed out by the State, Meadows' criminal behavior graduated from what would have been a minor felony to major felonies. Furthermore, after learning about Dumperth's lethal usage of the weapons, Meadows attempted to distance himself from Dumperth's criminal acts by claiming that his weapons had been stolen. Accordingly, based on the nature of the crime and Meadows' character, we conclude that the enhanced and consecutive sentence entered by the trial court was not inappropriate. *See* App. R. 7(B).

### CONCLUSION

Based on the foregoing, we conclude that the trial court properly sentenced Meadows.

Affirmed.

BAILEY, J., and MAY, J., concur.