**Steven L. BAYSINGER, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 01A02–0512–CR–1178.

Court of Appeals of Indiana.

Oct. 13, 2006.

John Pinnow, Special Assistant to State Public Defender, Greenwood, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Kelly A. Miklos, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Defendant, Steven L. Baysinger (Baysinger), appeals his sixty-five year sentence for murder, Ind.Code § 35–42–1–1(1).

We affirm.

### ISSUES

Baysinger raises two issues on appeal, which we restate as follows:

(1) Whether *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), *reh'g denied*, applies retroactively to Baysinger's case, thereby calling into question the trial court's findings of certain aggravating circumstances; and

(2) Whether Baysinger was properly sentenced.

### FACTS AND PROCEDURAL HISTORY

In the summer of 1996, Baysinger and Adam Ellis (Ellis) gave money to David Lee (Lee) so that he could purchase drugs for them. Lee did not deliver any drugs to the pair nor did he return the money. Consequently, Baysinger and Ellis conspired to dig a grave in the woods and to kill and bury Lee. On July 5, 1996, some time after Ellis had dug the grave, Baysinger picked up Lee and drove him to meet Ellis. After picking up Ellis, Baysinger drove the group to the woods. He then shot Lee three times in the head, killing him. Baysinger and Ellis burned Lee's clothes, placed his body in the makeshift grave, covered him with dirt, and left the scene.

In June 1999, almost three years after Baysinger and Ellis murdered Lee, Lee's body was found. Shortly thereafter, on June 23, 1999, Baysinger was charged with Count I, conspiracy to commit murder, I.C. §§ 35–42–1–1(1), 35–41–5–2, a class A felony, and Count II, murder, I.C. § 35–42–1–1(1). On January 23, 2001, Baysinger pled guilty to the murder charge in exchange for the dismissal of the conspiracy charge. His *open* plea agreement provided for an executed sentence not to exceed sixty-five years.

On March 19, 2001, the trial court conducted a sentencing hearing. It found the following aggravating circumstances: (1) Baysinger's prior criminal history; (2) the nature and circumstances of the crime; (3) lack of remorse; (4) need of correctional or rehabilitative treatment best provided by a penal facility; and (5) imposition of a reduced sentence would depreciate the seriousness of the crime.[1] In addition, the trial court found two mitigating circumstances: (1) Baysinger's criminal history consisted of only one prior conviction, and (2) Baysinger pled guilty and confessed to the present offense. In accordance with the plea agreement, the trial court sentenced Baysinger to sixty-five years executed at the Indiana Department of Correction.

Baysinger did not file a direct appeal of the trial court's decision. However, on March 1, 2005, he filed a petition for permission to file a belated notice of appeal under Indiana Post–Conviction Rule 2. The trial court denied the petition, but subsequently on October 6, 2005, we reversed the trial court's order. *See Baysinger v. State*, 835 N.E.2d 223 (Ind.Ct.App.2005).

---

1. In his brief, Baysinger states that the trial court found six aggravators. *See* Appellant's Br. p. 6–7. Two of the aggravators he cites, however, fall under the "nature and circumstances of the crime" aggravator, *i.e.*, (1) the crime was planned in advance, the victim was shot three times in the head without provocation, and (2) Baysinger assisted in burying the body, burning the victim's clothes, and concealing the murder.

Then, on November 3, 2005, Baysinger filed this belated notice of appeal, and his case now comes before this court. Additional facts will be provided as necessary.

### DISCUSSION AND DECISION

#### I. *Retroactive Application of Blakely*

Baysinger first argues that the trial court violated his Sixth Amendment right to have aggravating factors determined by a jury in violation of *Blakely v. Washington*. He insists that the language of Indiana Post–Conviction Rule 2(1) mandates retroactive application of *Blakely* under these facts. The Rule provides, in pertinent part, that where a court grants a defendant permission to file a belated notice of appeal that "notice of appeal shall be treated for all purposes as if filed within the prescribed period." Ind. Post–Conviction Rule 2(1). We agree.

■ We recently analyzed this issue in another belated appeal case and "conclude[d] that *Blakely* applies retroactively because [the defendant's] case was not yet final when *Blakely* was decided." *Meadows v. State*, 853 N.E.2d 1032, 1035 (Ind. Ct.App.2006) (quoting *Boyle v. State*, 851 N.E.2d 996, 1006 (Ind.Ct.App.2006)). Similarly, we conclude that in Baysinger's case, the availability of appeal via Post–Conviction Rule 2(1) had not yet been exhausted when *Blakely* was announced, and therefore *Blakely* must be given retroactive effect. *Meadows*, 853 N.E.2d at 1035. In reaching this conclusion, we echo the concerns voiced in *Boyle*, noting that the retroactive application of *Blakely* is likely to have a "highly detrimental effect on the administration of justice," and that it would wreak "havoc" on trial courts across the country. *Id.* Because of our Supreme Court's ruling in *Blakely*, many defendants

will pursue a belated appeal and challenge their enhanced sentences "on the basis of a rule that was not the law when they were convicted [and] could not have been anticipated when they were sentenced." *Id.* Accordingly, we reaffirm that "[u]nless and until the U.S. Supreme Court revises or clarifies its rules on retroactivity, however, we are bound to consider the merits of belated *Blakely* appeals where appropriate." *Id.*

#### II. *Sentencing*

■ Baysinger next argues that the trial court abused its discretion when it enhanced his sentence. In particular, Baysinger claims the trial court first recognized invalid aggravators pursuant to *Blakely* and then pronounced a sentence that was inappropriate in light of his character. It is well established that sentencing decisions lie within the discretion of the trial court and will be reversed only for abuse of discretion. *White v. State*, 846 N.E.2d 1026, 1034 (Ind.Ct.App.2006), *trans. denied.* Furthermore, we have held that when considering the appropriateness of the sentence for the crime committed, courts should initially focus upon the presumptive penalties.[2] Trial courts may then consider deviation from this presumptive sentence based upon a balancing of the factors, which must be considered pursuant to I.C. § 35–38–1–7.1(a), together with any discretionary aggravating and mitigating factors found to exist. *Id.* For a trial court to impose a sentence, other than the presumptive, it must (1) identify the significant aggravating factors and mitigating factors; (2) relate the specific facts and reasons that the court found to those aggravators and mitigators; and (3) demonstrate that the court has balanced

---

2. Public Law 71–2005, abolishing "presumptive sentences" in favor of "advisory sentences," is not applicable in the instant case since its effective date was April 25, 2005, whereas the commission of the offense for this case was prior to April 25, 2005. *See Richards v. State*, 681 N.E.2d 208, 213 (Ind. 1997).

the aggravators with the mitigators. *Id.* A single aggravating factor is sufficient to support the imposition of an enhanced sentence. *Id.* Therefore, even if a trial court improperly applies aggravating circumstances, a sentence enhancement may be upheld where there are other valid aggravating circumstances. *Id.* In addition, Indiana Appellate Rule 7(B) gives us authority to review and revise sentences to ensure that they are proportionate in light of the nature of the offense and character of the offender.

### A. *Aggravating Factors*

Baysinger relies on *Blakely* for support in alleging that the trial court relied on aggravating factors not pled and proven beyond a reasonable doubt to the jury. Our reading of the trial court's sentencing statement and sentencing order indicates that the trial court found five aggravators in this case: (1) Baysinger's prior criminal history; (2) the nature and circumstances of the crime; (3) lack of remorse; (4) the need of correctional or rehabilitative treatment best provided by a penal facility; and (5) the imposition of a reduced sentence would depreciate the seriousness of the crime. Baysinger does not contend that the trial court improperly found the nature and circumstances of his crime as an aggravator, so we need not address it further. In addition, the State concedes that the court improperly found that the imposition of a reduced sentence would depreciate the seriousness of the crime because there is no indication in the record that the trial court was considering the imposition of a mitigated sentence. *See Ector v. State,* 639 N.E.2d 1014, 1016 (Ind.1994), *reh'g denied.* The three remaining aggravators, however, require our attention.

In *Apprendi v. New Jersey,* 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), the United States Supreme Court held "other than the fact of prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt." *Blakely* clarified the statutory maximum to mean the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant. Blakely,* 542 U.S. at 303, 124 S.Ct. 2531. In accordance with *Blakely,* our supreme court recognizes four proper ways for a trial court to enhance a sentence with aggravating circumstances: (1) prior conviction(s); (2) a fact found by a jury beyond a reasonable doubt; (3) facts when admitted by a defendant; and (4) in the course of a guilty plea where the defendant has waived *Apprendi* rights and stipulated to certain facts or consented to judicial fact finding. *Trusley v. State,* 829 N.E.2d 923, 925 (Ind.2005).

Here, the trial court properly used Baysinger's prior criminal conviction to enhance his sentence. Baysinger's lone criminal conviction is a misdemeanor possession of marijuana in January 1996. He cites *Wooley v. State,* 716 N.E.2d 919, 929 (Ind.1999), *reh'g denied,* for the proposition that ordinarily a single, nonviolent misdemeanor conviction is not a significant aggravator for the crime of murder. We are mindful that the significance of a prior criminal history varies based on the gravity, nature, and number of prior offenses and their similarity to the instant offense. *See id.; see also Haas v. State,* 849 N.E.2d 550, 556 (Ind.2006). The State points out that Baysinger's prior criminal conviction was drug-related and occurred only six months before he murdered Lee over a drug-related dispute. Citing the reasoning used in *Wooley* and subsequent holdings on this issue, the State contends that the recency and nature of Baysinger's possession conviction supports the trial court's finding that it constitutes a significant aggravator. *See, e.g., Vasquez v. State,* 762 N.E.2d 92 (Ind.2001) (prior misdemeanor

convictions for conversion were significant in a murder case where the murder was committed as a result of defendant's plan to rob the victim). We agree with the State and therefore find that it was not an abuse of discretion for the trial court to find Baysinger's prior criminal history to be an aggravator. Therefore, a *Blakely* analysis, as to any other aggravators, is not necessary as we can say with confidence that the trial court would have imposed the same sentence had it considered only Baysinger's prior criminal history as an aggravator in this case. *See Witmer v. State*, 800 N.E.2d 571, 572–73 (Ind.2003) ("Where a trial court has used an erroneous aggravator, as occurred here, the court on appeal can nevertheless affirm the sentence if it can say with confidence that the same sentence is appropriate.") (citing *Day v. State*, 560 N.E.2d 641, 643 (Ind. 1990)). We therefore decline to remand Baysinger's case for a reevaluation of the sentencing considerations.

### B. *Appellate Rule 7(B) Analysis*

■ Baysinger's final argument is that his sixty-five-year sentence is inappropriate in light of the nature of the offense and his character. Indiana Appellate Rule 7(B) gives us the authority to revise a sentence authorized by statute if, after due consideration of the trial court's decision, we find that the sentence is inappropriate in light of the nature of the offense and the character of the offender. The presumptive sentence is meant to be a starting point for the trial court's consideration in determining an appropriate sentence. *White*, 846 N.E.2d at 1036. After due consideration of Baysinger's sentence, we cannot say that it is inappropriate.

■ First, the nature of this crime supports the sentence imposed. Baysinger and Ellis were angry with Lee for his role in an incomplete drug deal. In a premeditated fashion, they found a section of forest where they could dig a shallow grave for Lee's body. Baysinger picked up Lee first, and then Ellis, and the two men drove their victim near the spot in the woods where they had dug his grave. They led the man from the vehicle into the woods to his grave; then, Baysinger shot him three times in the head. Baysinger and Ellis apparently removed Lee's clothes, burned them, and tossed them in the grave with his body before filling the hole with dirt. The two men then concealed the crime until the body was discovered three years later. Nothing about the nature of this heinous crime persuades us to reduce the sentence imposed on this defendant.

Moreover, we are not persuaded that Baysinger so completely turned his life around in the three years between his commission of this crime and his arrest that we should revise his sentence. It is worth noting that Baysinger was not convicted of any crimes during this period, and he contends that he renounced drug use, sought an education, and led a law-abiding life as a result of his eventual realization that he was headed down a disastrous path. However, the State points out that Baysinger had been dealing drugs around the time of the murder, and we are reminded that he was convicted of possession of marijuana only six months before he killed Lee. Based on the information before us, we cannot say that Baysinger's character is so redeeming that we should take the unusual step of reducing his sentence under Rule 7(B). Accordingly, we find his sixty-five-year sentence is appropriate in light of the nature of the offense and his character.

### CONCLUSION

Based on the foregoing, we conclude that the trial court properly sentenced Baysinger.

Affirmed.

DARDEN, J., concurs.

VAIDIK, J., concurs in result with separate opinion.

VAIDIK, Judge, concurring in result.

While I concur in the result reached by the majority, I cannot agree that *Blakely v. Washington* should apply retroactively to Baysinger's case under Post–Conviction Rule 2(1). In his brief, Baysinger seizes on that portion of Rule 2(1) providing that "notice of appeal shall be treated for all purposes as if filed within the prescribed period." I believe that this language applies only to the procedural treatment of the notice of appeal and should not be manipulated as a vehicle to reach the substantive issues addressed in the appeal itself.

Our Supreme Court's ruling in *Fosha v. State*, 747 N.E.2d 549, 552 (Ind.2001), supports the assertion that the Rule's reference only to the "notice of appeal" limits the scope of its application to procedural matters. In *Fosha*, the Court retroactively applied the new double jeopardy rule established in *Richardson v. State*, 717 N.E.2d 32 (Ind.1999), to a case pending on direct appeal, which case had come before the court pursuant to a notice of belated appeal under Rule 2. Fosha filed his permission to file notice of belated appeal on August 16, 1999; *Richardson* was decided on October 1, 1999. Finding that the direct appeal was, procedurally speaking, *"initiate[d]"* with the filing of the permission to file notice of belated appeal, the Court held that *Richardson*, having been decided *after* Fosha's case was newly pending on direct appeal, applied retroactively to the case. *Fosha*, 747 N.E.2d at 552. It is worth noting, as well, that this application of Rule 2 comports with our Supreme Court's analysis in *Smylie v.*

*State*, 823 N.E.2d 679, 690–91 (Ind.2005), *cert. denied,* —— U.S. ——, 126 S.Ct. 545, 163 L.Ed.2d 459 (2005), where it determined that "we will apply *Blakely* retroactively to all cases *on direct review at the time Blakely was announced."* (Emphasis added.)

Employing this analysis in the case at bar requires nothing more than a review of the procedural timeline of the case. Baysinger was sentenced on March 19, 2001, and he did not pursue a direct appeal at that time. *Blakely* was decided on June 24, 2004, over three years after Baysinger had been sentenced and his opportunity to file a timely direct appeal had passed. *See* Ind. Appellate Rule 9(A)(1) (Notice of Appeal must be filed within thirty days after entry of a Final Judgment). On March 1, 2005—over eight months after *Blakely* was decided—Baysinger filed his notice for a belated appeal under Post–Conviction Rule 2; according to *Fosha*, this *initiated* Baysinger's direct appeal. *Beginning* on that date, then, Baysinger's case was newly pending on direct review.[3] In other words, Baysinger's belated appeal was filed after the *Blakely* decision and thus was not pending at the time *Blakely* was decided. *See Hull v. State*, 839 N.E.2d 1250, 1256 (Ind.Ct.App.2005); *Robbins v. State*, 839 N.E.2d 1196, 1199 (Ind.Ct.App. 2005). Accordingly, Baysinger's claims under *Blakely* must fail.

I am aware of the opposing line of reasoning represented by other recent decisions of this Court and consistent with the *Meadows* decision relied upon by the majority. *See Gutermuth v. State*, 848 N.E.2d 716, *trans. granted; Sullivan v. State*, 836 N.E.2d 1031 (Ind.Ct.App.2005). These cases hold that *Blakely* should apply to cases that, although not on direct appeal at the time *Blakely* was handed down, are

---

**3.** Although Baysinger's petition to file notice for a belated appeal was initially denied by the trial court, because that decision was re-

versed we regard the date of the original petition as the date on which the appeal was initiated.

later granted permission to file a belated appeal. These cases cite *Griffith v. Kentucky*, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987), for the proposition that retroactive application of new criminal rules is required for any case that was not "final" when the rule was handed down, and they contend that a case that is later granted a belated appeal was not "final" even though a timely appeal was not filed because the availability of an appeal, albeit a belated one, was not exhausted.

Specifically, these cases cite the following language from *Griffith*, which our Supreme Court also cited in *Smylie*: "a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, *pending on direct review or not yet final*, with no exception for cases in which the new rule constitutes a 'clear break' with the past." *Griffith*, 479 U.S. at 328, 107 S.Ct. 708; *Smylie*, 823 N.E.2d at 687 (emphasis added). I cannot agree with my colleagues' reading of this language inasmuch as it provides that a case cannot be considered "final" if there is a possibility that a belated appeal *not yet filed* could, at some point in the future, potentially *be* filed. My reading of *Griffith* convinces me that it does not support the retroactive extension of a new rule of law to cases no longer eligible for direct appeal wherein a belated appeal may still be filed *after* the new rule of law comes into effect. Indeed, the language of *Griffith* suggests that the "final" disposition of a case is synonymous with the expiration of the ability to timely file a direct appeal. *See Griffith*, 479 U.S. at 322–24, 326–27, 107 S.Ct. 708 (repeatedly referencing two types of cases that may exist when a new rule takes effect—those "on direct review" and those that had become "final"). Neither *Griffith* nor *Smylie* references belated appeals at all. I am not inclined, then, to read these cases in a manner that leaves any case that was never timely subjected to direct review perpetually "unfinal" for the purposes of retroactivity until such time as the defendant seeks a belated appeal.

I would hold, then, that *Blakely* does not apply retroactively to Baysinger's appeal. Reviewing the aggravators before the trial court, then, without subjecting any of them to a *Blakely* analysis, I would find that three of them—the nature and circumstances of the crime, past criminal history, and lack of remorse—are appropriate aggravators. Given the combination of these three aggravators, I can say with confidence that the trial court would have imposed the same sentence, therefore reversal is not necessary. I further agree with the majority's Rule 7(B) analysis, and I therefore concur in result.