**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**CHRISTOPHER A. CAGE**
Anderson, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ERIC P. BABBS**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| NA-SON D. SMITH, | ) |
| | ) |
| Appellant-Defendant, | ) |
| | ) |
| vs. | ) No. 48A02-1210-CR-872 |
| | ) |
| STATE OF INDIANA, | ) |
| | ) |
| Appellee-Plaintiff. | ) |

APPEAL FROM THE MADISON CIRCUIT COURT
The Honorable David A. Happe, Judge
Cause No. 48C01-1012-MR-784

**July 25, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

**Case Summary**

Na-son Smith ("Smith") appeals his convictions and sentences for two counts of Murder, a felony,[1] and one count of Robbery, as a Class A felony.[2] We affirm.

**Issues**

Smith presents four issues for review:

I. Whether the prosecutor committed misconduct by calling a witness for the sole purpose of impeaching his testimony;

II. Whether Smith's motion for involuntary dismissal should have been granted due to insufficient evidence;

III. Whether the trial court abused its sentencing discretion; and

IV. Whether Smith's sentence is inappropriate.

**Facts and Procedural History**

In November of 2010, Keya Prince ("Prince") and Stephen Streeter ("Streeter") lived on Menifee Street in Anderson, Indiana. When a neighbor approached the residence on November 29, 2010, she detected a foul odor emanating from an open window. Police were summoned to conduct a welfare check. After entering the residence, they found the bodies of Prince and Streeter. Prince had died of a gunshot through her torso, piercing her heart. Streeter had died of a gunshot to his head. Televisions and electronic equipment were missing from the house. Also missing was a large amount of cash that Streeter had recently possessed.

---

[1] Ind. Code § 35-42-1-1. This section has since been re-codified. We refer to the statute in effect at the time of the offense.

[2] I.C. § 35-42-5-1. This section has since been re-codified. We refer to the statute in effect at the time of the offense.

In the very early morning of the next day, Anderson Police Officer Ian Spearman ("Officer Spearman") was patrolling a neighborhood when he stopped Smith and his companion, Jacob Fuller ("Fuller") on suspicion of a curfew violation. Smith initially provided a false name. Meanwhile, Anderson Police Officer Brandon Grant ("Officer Grant") had been advised of a 9-1-1 call from the same neighborhood. A citizen had reported seeing a young man toss away a gun as Officer Spearman approached. Officer Grant radioed Officer Spearman to use extreme caution. He also advised as to Smith's correct identity. Fuller and Smith were placed under arrest.

During the ensuing police investigation, Fuller was identified as the individual who had been observed tossing a gun. The tossed gun was located, examined and determined to have been the weapon that had fired a bullet into Prince's body. Several witnesses reported that Fuller, Smith, Martez Brown ("Brown"), and a fourth young man had been seen in possession of large amounts of cash and had gone on a shopping spree. Eventually, Brown gave a statement to police wherein he claimed that he had gone with Fuller and Smith to the Prince-Streeter residence, where Fuller had shot Prince and Smith had shot Streeter.

Smith was charged with Murder, Burglary,[3] Robbery, Possession of a Handgun, and Theft.[4] On August 28, 2012, his bench trial commenced. The trial court dismissed the Burglary and handgun charges and entered judgments of conviction for two counts of Murder and a single count of Robbery, as a Class B felony. Smith was then given consecutive

---

[3] I.C. § 35-43-2-1. This statute has since been re-codified. We refer to the statute in effect at the time of the offense.

[4] I.C. § 35-43-4-2. This statute has since been re-codified. We refer to the statute in effect at the time of the offense.

sentences of sixty-five years imprisonment for each of the Murder convictions and twenty years imprisonment for the Robbery conviction, providing for an aggregate sentence of one hundred fifty years. He now appeals.

**Discussion and Decision**

Prosecutorial Misconduct

Brown was also charged with the murders of Prince and Streeter, and on August 2, 2012, he pled guilty to the charges against him. At Smith's trial, Brown was called as a witness for the State. When the prosecutor began to elicit testimony from Brown regarding his admissions at the guilty plea hearing, Smith objected on hearsay grounds. His objection was overruled, and Brown continued with his testimony, acknowledging that he had previously implicated himself, Smith, and Fuller in the murders, but claiming that he had lied.

Smith now claims that the prosecutor engaged in misconduct by calling Brown as a witness for the purpose of improper impeachment and by then urging conviction based upon impeachment evidence as opposed to substantive evidence. The State points out that Smith did not object on this basis at trial. An appellant cannot raise one ground for objection at trial and a different ground on appeal. Gasper v. State, 833 N.E.2d 1036, 1042 (Ind. Ct. App. 2005), trans. denied. Thus, Smith has waived his allegation of error for review.

As such, he may obtain relief only if his claim is one of fundamental error, that is, an error so serious and prejudicial that it rendered a fair trial impossible. Lemos v. State, 746 N.E.2d 972, 974 (Ind. 2001). In reviewing a claim of prosecutorial misconduct, we

4

determine (1) whether there was misconduct by the prosecutor; and (2) whether that misconduct, under the circumstances, placed the defendant in a position of grave peril to which the defendant should not have been subjected. Kent v. State, 675 N.E.2d 332, 335 (Ind. 1996). The gravity of peril turns on the probable persuasive effect of the misconduct on the jury's decision, not on the degree of impropriety of the conduct. Id.

"[I]t is improper for the prosecutor to call as a witness a codefendant when the prosecutor knows in advance that the witness will invoke the Fifth Amendment and refuse to testify." Borders v. State, 688 N.E.2d 874, 879 (Ind. 1997). Too, it is improper to call a witness when the prosecutor knows that useful evidence will not be elicited. Although Indiana Rule of Evidence 607 authorizes a party to impeach the credibility of its own witness, "the rule is abused if the party is permitted to call a co-defendant as a witness, when the party knows that the co-defendant will not give useful evidence, just so the party can introduce otherwise inadmissible hearsay evidence against the defendant, 'in the hope that the jury would miss the subtle distinction between impeachment and substantive evidence – or, if it didn't miss it, would ignore it.'" Julian v. State, 811 N.E.2d 392, 397 (Ind. Ct. App. 2004) (quoting U.S. v. Webster, 734 F.2d 1191, 1192 (7th Cir. 1984)), trans. denied.

To determine whether the State has abused the rule, this Court considers whether the prosecutor examined the witness for the primary purpose of placing before the jury inadmissible evidence. Id. However, otherwise inadmissible evidence that is placed before the jury when the State has a legitimate basis to call the witness will not be considered improper. Id.

5

The concern with prosecutorial misconduct in general and improper impeachment in particular is that the jury may be influenced in a manner inconsistent with the defendant's right to a fair trial. Here, no such concerns are present as this was a bench trial. Moreover, it does not appear that the prosecutor called Brown as a witness knowing that he would not provide useful information. There is no indication of record that the prosecutor had any reason to believe that Brown, having pled guilty, would repudiate both his guilty plea testimony and his statement to police.

For these reasons, the prosecutor's decision to call Brown as a witness and question him regarding prior statements had no "probable persuasive effect on the jury." Kent, 675 N.E.2d at 335. To the extent that the trial court was asked to distinguish between substantive and impeachment evidence, we presume that the trial court was able to do so. See Konopasek v. State, 946 N.E.2d 23, 28 (Ind. 2011) ("We generally presume that in a proceeding tried to the bench a court renders its decisions solely on the basis of relevant and probative evidence"). Smith has demonstrated no prosecutorial misconduct placing him in grave peril.

Sufficiency of the Evidence

At the conclusion of the State's case-in-chief, Smith moved for involuntary dismissal of the charges against him, claiming that there was no evidence of his participation in the murder and robbery of Streeter and Prince.

Indiana Trial Rule 41(B) provides, in pertinent part:

> Involuntary dismissal: Effect thereof. After the plaintiff or party with the burden of proof upon an issue, in an action tried by the court without a jury,

6

has completed the presentation of his evidence thereon, the opposing party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the weight of the evidence and the law there has been shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence.

The grant or denial of a motion to dismiss made under this rule is reviewed under the clearly erroneous standard. Todd v. State, 900 N.E.2d 776, 778 (Ind. Ct. App. 2009). In reviewing a motion for involuntary dismissal, we will not reweigh the evidence or judge the credibility of the witnesses. Id. We will reverse the trial court only if the evidence is not conflicting and points unerringly to a conclusion different from the one reached by the trial court. Id. The motion essentially tests the sufficiency of the State's evidence and our review of the denial of a motion for involuntary dismissal is limited to the State's evidence presented during its case-in-chief. Id.

A person who knowingly or intentionally kills another human being commits murder. I.C. § 35-42-1-1. A person who knowingly or intentionally takes property from another person by using force commits robbery. I.C. § 35-42-5-1. Here, the State acknowledged that Smith was likely not the actual shooter and proceeded under an accomplice liability theory with respect to the murder charges. "A person who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense[.]" I.C. § 35-41-2-4.

In determining accomplice liability, the fact-finder can consider factors including: (1) presence at the scene of the crime; (2) companionship with another engaged in a crime; (3) failure to oppose the commission of the crime; and (4) the course of conduct before, during, and after the occurrence of the crime. Wieland v. State, 736 N.E.2d 1198, 1202 (Ind. 2000).

7

A defendant's presence during the commission of the crime or his failure to oppose the crime, standing alone, are insufficient to establish accomplice liability; however, a fact-finder may consider them along with the factors above to determine participation. Id. Moreover, accomplice liability applies to the contemplated offense and all acts that are a probable and natural consequence of the concerted action. Id.

The probative evidence supporting the judgment includes the following. Approximately three hours after the victims were last seen at a fast food restaurant, Smith took a photograph on his cellular telephone showing himself displaying a large amount of cash. A few hours after that, he and his co-defendants were in possession of two large screen televisions consistent with the description of the victims' televisions. Smith asked a family friend to hold the televisions for him, explaining that he had argued with a girlfriend and wanted to hide the televisions. He was in possession of shopping bags and boxes, something inconsistent with his usual financial circumstances. Wal-Mart video surveillance showed that Smith had purchased a cellular telephone on the same day. He and Fuller jointly returned the van they had borrowed for their shopping spree.[5]

Atypically, Smith was wearing new clothing when he visited a family friend, James Dickerson ("Dickerson"). Dickerson inquired about the clothing and Smith explained that he had "hit a lick"[6] and "got $7,000."[7] (Tr. 346.) During the visit, Dickerson learned about the

---

[5] Drugs had been exchanged for the use of the van.

[6] Other testimony indicated that this phrase typically refers to a robbery.

[7] There was evidence that Streeter was in possession of approximately $25,000 shortly before his death. Accordingly, a three-way split would result in each co-defendant having around $7,000. The State also

murders from an outside source. When he began to identify the victims by saying "Keya," Smith finished the sentence by saying, "and Big Steve." (Tr. 347.) Smith immediately left, appearing to Dickerson to be "a little anxious to get out the door." (Tr. 348.) According to Antoine Skinner, Smith was also seen with Brown, Fuller, and a fourth young man "flashing money" estimated to be thousands of dollars. (Tr. 366.)

Smith was with Fuller when Fuller discarded the weapon that was later determined to be the weapon used to kill Prince. He provided a fictitious name to the police officer who detained him and Fuller. Smith placed a jail telephone call to Brown. In the recorded conversation, Smith referenced murder: "if they find out I had something to do with that [sic] murders." (State's Ex. 161.) He inquired as to whether Brown had "both guns" and asked him to look for a "twenty." (State's Ex. 161.)

At points during his trial testimony, Brown admitted that he, Fuller, and Smith committed the alleged murders, although in later testimony he contradicted that admission[8]:

> Prosecutor: When you committed this murder and robbery, the three of you, Jacob Fuller and Na-Son Smith and yourself, did you take televisions out of the house?
>
> Brown: Yes.
>
> *** * *

---

presented testimony that there were no other reported robberies in Anderson in the relevant time frame where such large sums of cash were missing.

[8] There was significant evidence introduced for the purpose of impeaching Brown's testimony in repudiation of his prior confession and guilty plea testimony. In his statement to police, Brown had implicated Fuller and Smith while providing details of the murders that predictably only one present at the scene could provide. He had pled guilty to murder and robbery and, in those proceedings, had also admitted that he, Smith, and Fuller had robbed and murdered Streeter and Prince.

Prosecutor: So before you guys committed the murders you stole t.v.'s somewhere else, is that what you're saying?

Brown: Yeah.

(Tr. 316, 319.)

From the foregoing, the fact-finder could have determined beyond a reasonable doubt that Smith acted in concert with Brown and Fuller to rob and kill Streeter and Prince. The evidence was sufficient to withstand Smith's motion for involuntary dismissal.

## Sentencing

A person who commits Murder has a sentencing range of between forty-five years and sixty-five years with the advisory sentence being fifty-five years. See I.C. § 35-50-2-3. The sentencing range for a Class B felony is from five years to twenty years imprisonment, with an advisory sentence of ten years. See I.C. § 35-50-2-5.[9] For his convictions of two counts of Murder and one Class B felony, Smith received an aggregate sentence of one hundred and fifty years, the maximum sentence.

In imposing this sentence, the trial court found five aggravators: Smith's history of juvenile offenses, his pending unrelated criminal charges, his conspiracy with others to commit the robbery and murders, the offenses were committed in the presence of a person under age eighteen, and there were multiple deaths. His young age was found to be a mitigating circumstance. Smith contends that the trial court abused its discretion in the finding of aggravators.

---

[9] We refer to the statute in effect at the time of Smith's offenses.

10

"So long as the sentence is within the statutory range, it is subject to review only for abuse of discretion." Anglemyer v. State, 868 N.E.2d 482, 490 (Ind. 2007), clarified on other grounds, 875 N.E.2d 218 (Ind. 2007). This includes the finding of an aggravating circumstance and the omission to find a proffered mitigating circumstance. Id. at 490-91. When imposing a sentence for a felony, the trial court must enter "a sentencing statement that includes a reasonably detailed recitation of its reasons for imposing a particular sentence." Id. at 491.

The trial court's reasons must be supported by the record and must not be improper as a matter of law. Id. However, a trial court's sentencing order may no longer be challenged as reflecting an improper weighing of sentencing factors. Id. A trial court abuses its discretion if its reasons and circumstances for imposing a particular sentence are clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. Hollin v. State, 877 N.E.2d 462, 464 (Ind. 2007).

A defendant's history of juvenile adjudications is a proper aggravating circumstance for sentencing purposes. Haas v. State, 849 N.E.2d 550, 555 (Ind. 2006). As to this aggravator, Smith claims that "while this record was certainly enough to justify an enhanced sentence, it alone would not suggest that it was among the worst this court has seen in order to substantiate a maximum enhancement." Appellant's Brief at 20. This argument presents an invitation to reweigh sentencing factors and accord less significance to this aggravator. We may not do so. Anglemyer, 868 N.E.2d at 491.

11

At the time of sentencing, Smith was facing charges for burglary, armed robbery, theft, residential entry, criminal recklessness, and criminal confinement. The charges were based upon events occurring shortly before the murders. Smith asserts that the pending charges were not a proper aggravator because the State failed to establish through any proof at sentencing that he had committed any of the unrelated offenses. "A record of arrest, without more, does not establish the historical fact that a defendant committed a criminal offense and may not be properly considered as evidence of criminal history." Cotto v. State, 829 N.E.2d 520, 526 (Ind. 2005). Nonetheless, a record of arrests and charges may reveal that a defendant has not been deterred from criminal activity even after having been subject to the police authority of the State. Id. A sentencing court may consider the charges as evidence of the defendant's character and the risk that he will reoffend. Tunstill v. State, 568 N.E.2d 539, 545 (Ind. 1991).

Smith alleges that the trial court should not have considered his conspiracy with Brown and Fuller to be an aggravator, arguing: "It would appear that the trial court used actions which were part of the elements of the theory of accomplice liability to also enhance the sentence. If so, Indiana law prohibits such use." Appellant's Br. at 21. He directs our attention to Lemos, wherein our supreme court stated: "Lemos is correct that a trial court may not use a material element of the offense as an aggravating circumstance." 746 N.E.2d at 975.

In Lemos, the Court had examined a sentence imposed under the presumptive sentencing scheme. Subsequently, the Court has explained that, "[b]ased on the 2005

12

statutory changes [enacting an advisory scheme], this is no longer an inappropriate double enhancement." Pedraza v. State, 887 N.E.2d 77, 80 (Ind. 2008). If, however, a trial court imposed a maximum sentence while explaining only that an element was the reason, the trial court would have provided an unconvincing reason that might warrant revision of the sentence on appeal. Id. (emphasis in original). Such is not the situation here. The trial court properly focused upon the evidence that Smith acted in concert with others and also identified other valid circumstances to ultimately support the maximum sentence.

With respect to the finding that the crimes were committed in the presence of an individual under age eighteen, an apparent reference to Brown, Indiana Code section 35-38-1-7.1(4) includes as a specific aggravating circumstance the commission of a crime of violence in the presence or within hearing of an individual who was less than eighteen years of age and is not the victim of the offense. The best evidence of legislative intent is the text of the statute. Adams v. State, 960 N.E.2d 793, 798 (Ind. 2012). Although Smith suggests that we read into the statute an exception for a co-actor under age eighteen, there is no such statutory exclusion in the language chosen by the legislature.

Finally, Smith argues that the trial court should have considered the fact that there were multiple murders only in deciding whether or not to impose consecutive sentences. Nonetheless, he provides no authority for the proposition that "the aggravator should not have an impact on the term of the sentence imposed." Appellant's Br. at 22. His failure to develop a cogent argument waives the contention for review. Ind. Appellate Rule 46. Smith has demonstrated no abuse of the trial court's sentencing discretion.

Smith also claims that his sentence is inappropriate. The authority granted to this Court by Article 7, § 6 of the Indiana Constitution permitting appellate review and revision of criminal sentences is implemented through Appellate Rule 7(B), which provides: "The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Under this rule, and as interpreted by case law, appellate courts may revise sentences after due consideration of the trial court's decision, if the sentence is found to be inappropriate in light of the nature of the offense and the character of the offender. Cardwell v. State, 895 N.E.2d 1219, 1222-25 (Ind. 2008); Serino v. State, 798 N.E.2d 852, 856-7 (Ind. 2003). The principal role of such review is to attempt to leaven the outliers. Cardwell, 895 N.E.2d at 1225.

Having reviewed the matter, we find no abuse of discretion in the trial court's finding of aggravators, we conclude that the trial court did not impose an inappropriate sentence under Appellate Rule 7(B), and the sentence does not warrant appellate revision. Accordingly, we decline to disturb the sentence imposed by the trial court.

**Conclusion**

Smith has demonstrated no prosecutorial misconduct. He was not entitled to involuntary dismissal of the charges against him. The trial court did not abuse its discretion in sentencing Smith and his maximum sentence is not inappropriate.

Affirmed.

NAJAM, J., and BARNES, J., concur.