**Maurice FOSHA, Defendant–Appellant,**

**v.**

**STATE of Indiana, Plaintiff–Appellee.**

No. 49S00–9911–CR–668.

Supreme Court of Indiana.

May 23, 2001.

550

Janice L. Stevens, Marion County Public Defender, Indianapolis, IN, Attorney for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Arthur Thaddeus Perry, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

DICKSON, Justice.

The defendant, Maurice Fosha, was convicted of murder,[1] conspiracy to commit murder as a class A felony,[2] and carrying a handgun without a license as a class A misdemeanor,[3] for the February 23, 1992, killing of Gary Moore in Marion County. In this appeal we consider the defendant's claims of: (1) Indiana Double Jeopardy Clause violation; (2) discovery violations; and (3) infringement of his right to cross-examine witnesses.

### Indiana Double Jeopardy

The defendant contends that his convictions for murder and conspiracy to commit murder violate the Indiana Double

[1]. Ind.Code § 35–42–1–1.

[2]. Ind.Code § 35–41–5–2; Ind.Code § 35–42–1–1.

[3]. Ind.Code § 35–47–2–1.

Jeopardy Clause [4] under the actual evidence test enunciated in *Richardson v. State*, 717 N.E.2d 32, 53 (Ind.1999). The State responds that *Richardson* does not apply because it was handed down after the defendant's convictions and sentence became final.[5] Citing *Taylor v. State*, 717 N.E.2d 90 (Ind.1999), and *State v. Mohler*, 694 N.E.2d 1129 (Ind.1998), the State argues that our *Richardson* Double Jeopardy Clause methodology constituted a new constitutional rule of criminal procedure that does not apply retroactively to cases that became final before the new rule was announced.

In *Taylor*, we declared that, as a new constitutional rule of criminal procedure, the *Richardson* formulation "is not available for retroactive application in post-conviction proceedings." 717 N.E.2d at 95. We held in *Mohler* that new rules of criminal procedure are not retroactive to convictions and sentences that have become final before the new rule was created. 694 N.E.2d at 1133. The determinative point in time "when Mohler's convictions and sentence became final," was based on whether his praecipe for appeal was filed within the allotted thirty day period. *Id.* Because Mohler had not timely filed a praecipe, his convictions and sentence were deemed final on the day he was sentenced. *Id.* But *Mohler* was an appeal from a grant of post-conviction relief. Mohler had neither brought a direct appeal of his convictions or sentence nor had he sought to bring a belated direct appeal pursuant to Post–Conviction Rule 2. *Id.* at 1131

In the present case, the defendant sought and received permission to file a belated praecipe, which he timely filed on August 16, 1999, to initiate this appeal. Where a trial court grants a defendant's motion to file a belated praecipe, it "shall be treated for all purposes as if filed within the prescribed period." Ind.Post–Conviction Rule 2(1).[6] We therefore find that our rule that precludes retroactive application of new criminal rules to collateral proceedings does not apply to direct appeals brought pursuant to Post–Conviction Rule 2. Accordingly, we will consider the defendant's *Richardson* claim.

The defendant contends that his convictions of murder and conspiracy to commit murder violate the *Richardson* actual evidence test:

> To show that two challenged offenses constitute the "same offense" in a claim of double jeopardy, a defendant must demonstrate a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense.

717 N.E.2d at 53. He argues that there is a reasonable possibility that the jury used the same evidence of the shooting to establish both the offense of murder and that of conspiracy to commit murder. The essential elements of the offense of murder are (1) the defendant (2) with knowledge or intent (3) killed (4) another human being.

---

4. IND. CONST. art. 1, § 14.

5. The State maintains that the defendant's convictions and sentence became final when the defendant did not perfect a timely direct appeal by February 3, 1994, thirty days after the defendant's motion to correct errors was deemed denied pursuant to Indiana Trial Rule 53.3(A).

6. The language of this provision was modified effective January 1, 2001, to comport with revisions in the Indiana Rules of Appellate Procedure, which applies to appeals commenced after January 1, 2001. This appeal having been initiated prior thereto, we apply the former rule.

Ind.Code § 35–42–1–1. The essential elements of the offense of conspiracy to commit murder are: (1) the defendant (2) agreed with one or more other persons to commit the crime of murder (3) with the intent to commit murder and (4) the defendant or one of the persons to the agreement performed an overt act in furtherance of the agreement. Ind.Code § ˊ35–41–5–2.

At trial, the State presented evidence that Wilson gave the defendant a 9 mm handgun, drove him to Moore's location, and dropped him off; that Moore was killed by multiple 9 mm gunshot wounds; that the defendant admitted the shooting to an acquaintance; and that the bullets recovered during Moore's autopsy and the cartridge casings from the murder scene were fired by a 9 mm Beretta semi-automatic firearm later found in the defendant's possession. During his trial testimony, the defendant denied the shooting. He stated that he had been in the car with Wilson, that he refused Wilson's directive to shoot Moore and began to leave the scene, but then heard shots and knew Wilson carried a 9 mm handgun.

The court read the charging information to the jury. Count I, charging murder, alleged that the defendant and Lance Wilson knowingly and intentionally killed Gary Moore by shooting him with a handgun, causing his death. As to conspiracy to commit murder, the charging information alleged that the defendant and Wilson, with the intent to murder Moore, agreed with each other to kill him and then, as an overt act in furtherance of the agreement, Wilson shot Moore with a handgun. The jury was instructed that to convict the defendant of murder, the evidence must prove that he (1) knowingly and intention-

ally (2) killed (3) another human being. Record at 86. In addition, the court gave several instructions regarding accomplice criminal liability. Record at 94–96, 98. The jury instructions regarding conspiracy stated that the evidence must prove that the defendant (1) agreed with Lance Wilson to commit the crime of murder (2) with intent to commit the crime, and (3) Lance Wilson performed an overt act in furtherance of the agreement by shooting at and against Gary Moore by means of a deadly weapon, that is, a handgun. Record at 87.

Because the jury was instructed that the defendant could be found guilty of murder as Wilson's accomplice, it is thus reasonably possible that the evidentiary facts used by the jury to establish the essential elements of the conspiracy charge (the defendant, intending to murder, agreed with Wilson, and Wilson shot Moore) were also used to prove the essential elements of murder (defendant, intended to murder Moore, and was an accomplice to Wilson's shooting of Moore). Under the *Richardson* actual evidence test, the defendant has demonstrated that his convictions for both murder and conspiracy to commit murder violate the Indiana Double Jeopardy Clause. Because both convictions cannot stand, we vacate the defendant's conspiracy conviction and sentence.[7]

### Discovery

The defendant contends that the State's discovery violations "sabotaged" his defense and denied him his right to fair trial.

 This Court has long recognized the proper roles of trial and appellate courts in the resolution of discovery disputes:

"A trial judge has the responsibility to direct the trial in a manner that facili-

---

7. Because the defendant may not be sentenced on his conspiracy conviction, we do not address his claim that his sixty-year sentence for conspiracy exceeded statutory authority.

tates the ascertainment of truth, ensures fairness, and obtains economy of time and effort commensurate with the rights of society and the criminal defendant. Where there has been a failure to comply with discovery procedures, the trial judge is usually in the best position to determine the dictates of fundamental fairness and whether any resulting harm can be eliminated or satisfactorily alleviated. Where remedial measures are warranted, a continuance is usually the proper remedy, but exclusion of evidence may be appropriate where the discovery non-compliance has been flagrant and deliberate, or so misleading or in such bad faith as to impair the right of fair trial. The trial court must be given wide discretionary latitude in discovery matters since it has the duty to promote the discovery of truth and to guide and control the proceedings, and will be granted deference in assessing what constitutes substantial compliance with discovery orders. Absent clear error and resulting prejudice, the trial court's determinations as to violations and sanctions should not be overturned." *Cliver v. State*, 666 N.E.2d 59, 64 (Ind.1996)(quoting *Vanway v. State*, 541 N.E.2d 523, 526–27 (Ind.1989) (citations omitted)).

The defendant specifically contends that the State failed to provide any discovery concerning an important State witness, Tony Poplion, until the middle of the trial; that the State prevented the defense from deposing Poplion until the second day of trial, and even then without Poplion's prior statements;[8] that the prosecutor lied to the trial court about Poplion's prior statements; and that the State failed to timely disclose the prior statement and plea agreement of another key State witness, Anthony Wilhite.

■ Preceding his appearance at trial, Anthony Poplion was incarcerated at the Metropolitan Detention Center in Los Angeles, California. He was transported by law enforcement personnel to Indiana to testify in this case. Poplion arrived in Indiana the night of the first day of trial. He was made available to defense counsel and was deposed the next morning. Defense counsel was aware of Poplion's whereabouts before trial[9] and was not prevented from traveling to Los Angeles to interview Poplion. The defendant has failed to show a discovery order violation by the State in failing to make Poplion available to the defense earlier. The trial court did not err in denying the defendant's request for relief.

■ The defendant also contends that the State withheld a taped statement taken from Poplion. Poplion gave a short statement to Sergeant Joseph Guzman of the Los Angeles Sheriff's Department on

8. As to the disclosure of Poplion's 1992 statement, the defendant expressly limits this claim to "discovery violation only" and declares that he "is not raising a claim under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), as he does not have an adequate record to do so." Br. of Defendant/Appellant at 14 n. 2.

9. That Poplion would be available to testify in this case was not known to the State until four or five days before trial. The State promptly notified the defendant of its intention to transport Poplion to Indiana and call him as a witness. There is no error when the State provides a defendant evidence as soon as the State is in possession of the requested evidence. *See Warren v. State*, 725 N.E.2d 828, 832–33 (Ind.2000) (finding no error where State turned over 911 tape as soon as in possession); *Grooms v. State*, 269 Ind. 212, 219, 379 N.E.2d 458, 463, (1978) (finding no discovery violation where the trial court found police investigative reports had never been in the possession of the prosecutor's office, nor in the prosecutor's file).

July 20th, and on July 26th, Sergeant Guzman transported Poplion from Los Angeles to Indianapolis.[10] Record at 533–36. The State was under the impression that the July 20th interview was unrecorded. Record at 519. On July 28th, during a hearing out of the jury's presence, Sergeant Guzman revealed that he had taped the statement. Record at 521. The trial court denied the defendant's motion to sanction the State for withholding the statement, specifically finding that the State did not know the statement was taped until it was revealed in court. · Record at 539. The record supports this determination. We find no error in the trial court's decision.

■ The defendant also argues that the state failed to timely disclose the prior statement and plea agreement of another state witness, Anthony Wilhite. Wilhite made a statement to federal authorities in Memphis, Tennessee, when he surrendered to them. While his statement was not taped, defense counsel represented that Wilhite stated in his deposition that he signed something memorializing his statement. The State advised the trial court that the statement concerned the two kilos of cocaine found on Wilhite when he turned himself in and had nothing to do with the present case. The trial court instructed the prosecutor to make further efforts to obtain Wilhite's statement from the DEA in Memphis, but the record does not disclose whether the statement was ever obtained by the State or given to the defense. As to the production of Wilhite's statement, we decline to find that the State violated the court's discovery order.

■ With regard to the claimed failure to produce Wilhite's plea agreement, the defendant requested production of a written plea agreement between the federal authorities in Memphis and Wilhite. The State responded that there was no written plea agreement although the federal prosecutor had filed a motion to deviate from the federal sentencing guidelines. Immediately prior to preliminary instructions and opening statements, the trial court instructed the prosecutor to continue efforts to obtain a copy of the motion to deviate "and any written plea agreements, if they may exist." Record at 164. Later, at the conclusion of jury proceedings that day, the prosecutor advised the court, "I have received the plea agreement from the U.S. District Court, Western District of Tennessee." Record at 298. This document was given to the defense before Wilhite testified, and the defendant sought no further relief from the trial court. The defendant does not claim trial court error as to the production of the Wilhite plea agreement.

The defendant urges that the State's incomplete, deceptive, and belated discovery responses evidenced bad faith and denied his right to a fair trial. The record does not support these claims. We find that the trial court exercised sound discretion as to the discovery claims raised by the defendant at trial.

### Cross-examination of Wilhite

■ The defendant's final contention is that he was denied his constitutional right · to fully cross-examine the State's key witness against him, Anthony Wilhite, regarding the penalties Wilhite was avoiding by

---

**10.** Poplion gave two statements to authorities that became an issue in this trial. Poplion gave a statement to the federal Drug Enforcement Agency (DEA) in July of 1992, and then he gave one to Sergeant Guzman shortly before transport in July of 1993. The prosecutor informed the trial court that the 1992 statement to the DEA was about narcotics transactions and did not contain admissions by the defendant and that, although the State tried to obtain the 1992 statement, neither the State nor the defense was given access to it.

testifying. At trial, the defendant sought relief from the trial court's pre-trial ruling that prevented both the State and the defendant from eliciting information about the penalties Wilhite would face if charged with the same criminal charges on which the defendant was being tried. The defendant's offer to prove at trial asserted that his cross-examination would establish the amount of time Wilhite was avoiding by cooperating with the State. The trial court denied the defendant's request for relief from the ruling on the motion in limine, stating that "the State cannot mention penalties, the defense can't either. You can't do indirectly what you can't do directly." Record at 433.

The State argues that "there was no evidence of any deal between the State and Wilhite" and that his agreement to cooperate with federal authorities did not require him to testify in this case. Br. of Appellee at 8. It also argues that the defense was permitted to elicit and argue that Wilhite had not been prosecuted for his involvement in the murder or conspiracy. The State urges that there was no abuse of discretion, and that, if error is found, it was harmless in light of the overwhelming evidence of the defendant's guilt.

■ While the constitutional right of confrontation requires that a defendant be afforded an opportunity to conduct a full, adequate, and effective cross-examination, a trial judge may impose reasonable limits which will not warrant reversal absent a clear abuse of discretion. *Strong v. State*, 538 N.E.2d 924, 928 (Ind.1989).

■ The exposure of a witness's motivations in testifying is a proper and important function of the constitutionally protected right of cross-examination. *Jarrett v. State*, 498 N.E.2d 967, 968 (Ind. 1986). Often it is relevant and proper "for [the] jury to know the quantity of benefit to accusing witnesses." *Id.* However, in

cases where there has been no plea agreement between the witness and the State or a patent benefit for testifying, we have found no abuse of discretion in limiting the testimony of a witness as long as the jury has been sufficiently apprised of the circumstances surrounding the testimony. *See, e.g., Wolfe v. State*, 562 N.E.2d 414, 420 (Ind.1990) (declining to find error where witness neither charged in instant case nor testifying pursuant to a plea bargain in another case and motives for testifying elicited); *Bergfeld v. State*, 531 N.E.2d 486, 492 (Ind.1988) (finding no error where co-defendant witness received no plea bargain or patent benefit for testimony and testimony brought forth about advantages of exculpating himself); *Fassoth v. State*, 525 N.E.2d 318, 322 (Ind. 1988) (finding no error where witness received no plea bargain, testimony was elicited that he testified under use immunity, and witness was unsure of benefit he would receive for testifying). *But see Smith v. State*, 721 N.E.2d 213, 219 (Ind. 1999) (finding it error for trial court to exclude evidence identifying pending charges and the witness's perceptions of the arrangement that resulted in his release on his own recognizance).

Departing an airplane while carrying two kilos of cocaine, Wilhite voluntarily surrendered to police at a Tennessee airport. He was facing federal charges, but his agreement to cooperate with federal authorities did not require him to testify in the present case. Record at 420. At the time of trial, he had not been charged with any crimes in Marion County that were related to this case or his admissions. The defendant was able to elicit all this information at trial, and the defense argued that the lack of prosecution in Marion County was the motive for Wilhite's testimony. The defendant also brought out the fact that the uncharged crimes were seri-

ous and would amount to many years. He was only prevented from inquiring into exact sentences that would attach to each crime. As there was no plea agreement or patent benefit present and the jury was sufficiently apprised of the circumstances surrounding Wilhite's testimony, the trial court did not abuse its discretion when it excluded testimony of the penalties the defendant would have received had he been convicted of the crimes in this case.

## Conclusion

We affirm the defendant's convictions for murder and carrying a handgun without a license, and we vacate his conviction for conspiracy to commit murder.

SHEPARD, C.J., and SULLIVAN, BOEHM, and RUCKER, JJ., concur.