**Stephan M. GALLAGHER,**
**Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 15A04–0806–CR–326.**

Court of Appeals of Indiana.

May 22, 2009.

---

Leanna Weissmann, Lawrenceburg, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Ian McLean, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

KIRSCH, Judge.

Stephan M. Gallagher was convicted of dealing in a schedule II substance [1] as a

---

1. *See* Ind.Code § 35–48–4–2.

Class A felony after a jury trial and was sentenced to thirty years with ten years suspended for an executed sentence of twenty years. He appeals, raising the following restated issues: [2]

I. Whether the State failed to rebut Gallagher's statutory defense under Indiana Code section 35–48–4–16 that he was only within 1,000 feet of the school for a brief period of time while no children were present at the location;

II. Whether the trial court erred when it admitted the audio recording of the drug buy into evidence because Gallagher believed that the State violated the discovery order when it provided a copy of the recording that was not as clearly audible as the copy introduced at trial and because the recording contained evidence of other bad acts; and

III. Whether the trial court abused its discretion when it instructed the jury regarding the statutory requirements of accomplice liability.

We affirm in part, reverse in part, and remand.

### FACTS AND PROCEDURAL HISTORY

In the fall of 2005, Detective Shane McHenry of the Dearborn County Sheriff's Department had several conversations with Danny Goodpaster regarding whether Goodpaster would be willing to help Detective McHenry in investigating drug-related activity in the county. Detective McHenry and Goodpaster knew each other from prior employment during their high school years. The detective had received information regarding Gallagher, and as he knew that Goodpaster was acquainted with Gallagher because Gallagher lived with Goodpaster's sister, Detective McHenry asked if Goodpaster would attempt to purchase drugs from Gallagher. Goodpaster initially refused, but several weeks later, after he was charged with several offenses, Goodpaster agreed to attempt to buy drugs from Gallagher in exchange for the detective's assurance that he would notify the prosecutor's office about Goodpaster's cooperation.[3]

Goodpaster spoke with Gallagher on a couple occasions about purchasing drugs from him. At approximately 1:00 a.m., on November 29, 2005, Goodpaster called Gallagher and asked about purchasing drugs. Gallagher agreed to arrange for Goodpaster to buy ten Percocet pills for fifty dollars with Gallagher taking four of the pills as compensation for doing business at such a late hour. Gallagher told Goodpaster that he would be with two women when they met and that they would be traveling in one of the women's car. Gallagher also told Goodpaster that they would meet behind Beyer's Pharmacy in Aurora, Indiana to complete the transaction because this location was near to the

---

2. Gallagher also contends that the state failed to rebut his defense that he was only at the location at the request of an agent of a law enforcement officer and that his sentence was inappropriate. Because we reverse Gallagher's class A felony conviction on other grounds and remand for re-sentencing, we do not reach either issue.

3. Goodpaster eventually pleaded guilty to operating while intoxicated and received a one-

year sentence, all of which was suspended except for ninety days with twenty days served in the county jail and seventy days served on home detention. His other charges were all dismissed. At Gallagher's trial, Goodpaster testified that Detective McHenry did not help him with the charges because his attorney said that Goodpaster did not receive a good plea agreement and because Goodpaster knew others who had received more lenient sentences for the same crime.

source of the pills. This location is within 1,000 feet of St. John's Lutheran School.

After his conversation with Gallagher, Goodpaster called Detective McHenry, who was asleep at his home, and told him about the planned drug transaction. The detective picked up Goodpaster and took him to the police station. While there, Goodpaster was searched and given fifty dollars in buy money and an electronic recording device. At approximately 3:00 a.m., Detective McHenry drove Goodpaster to the area where the transaction was to occur. Goodpaster exited the car and walked to the vehicle that contained Gallagher and the two women. Goodpaster got into the back seat with Gallagher and handed him the money. Gallagher then handed the money to one of the women, who exited the vehicle and walked toward some nearby apartments. After some time, she returned with ten pills wrapped in cellophane. They then discussed that the pills were to be divided between Goodpaster and Gallagher. The women took four pills out of the wrapping and handed the rest to Gallagher, who gave them to Goodpaster. Goodpaster then exited the vehicle and met with Detective McHenry again. Approximately twenty minutes elapsed from the time Goodpaster met Gallagher until when he left with the pills.

The vehicle containing Gallagher and the two women was stopped a few blocks away by a deputy from the Sheriff's Department who was awaiting instruction from Detective McHenry. Gallagher was interviewed by the detective and admitted that he had arranged for Goodpaster to purchase the pills. Later analysis determined that the pills contained oxycodone, a schedule II controlled substance. Gallagher was charged with dealing in a schedule II controlled substance as a Class A felony and conspiracy to commit dealing in a schedule II controlled substance as a Class A felo-

ny. A jury trial was held, and Gallagher was found guilty of both charges. At the sentencing hearing, the trial court vacated Gallagher's conviction for conspiracy to commit dealing in a schedule II controlled substance to avoid any double jeopardy problems and sentenced him to thirty years for his remaining conviction with ten years suspended for an executed sentence of twenty years. Gallagher now appeals.

## DISCUSSION AND DECISION

### I. Statutory Defense

■ "When reviewing a defense, we apply the same standard of review as that applied to other challenges to the sufficiency of the evidence." *Bell v. State*, 881 N.E.2d 1080, 1085 (Ind.Ct.App.2008), *trans. denied.* Therefore, we do not reweigh the evidence or judge the credibility of the witnesses and consider only the evidence supporting the verdict and the reasonable inferences that may be drawn therefrom. *Id.* at 1085–86.

■ Indiana Code section 35–48–4–16 states in relevant part:

(a) For an offense under this chapter that requires proof of:

(1) delivery of . . . a controlled substance;

. . .

within one thousand (1,000) feet of school property . . . the person charged may assert the defense in subsection (b) or (c).

(b) It is a defense for a person charged under this chapter with an offense that contains an element listed in subsection (a) that:

(1) a person was briefly in, on, or within one thousand (1,000) feet of school property . . . and;

(2) no person under eighteen (18) years of age at least three (3) years junior to the person was in, on, or

within one thousand (1,000) feet of the school property ... at the time of the offense.

The defenses under this section are defenses of justification, which " 'admit that the facts of the crime occurred but contend that the acts were justified.' " *Bell*, 881 N.E.2d at 1086 (quoting *Moon v. State*, 823 N.E.2d 710, 716 (Ind.Ct.App.2005), *trans. denied* ). "Indiana has allocated the burden as to these defenses in two steps." *Moon*, 823 N.E.2d at 716. The defendant must first produce evidence raising the defense. *Id.* Secondly, the State must negate at least one element of the defense beyond a reasonable doubt. *Id.*

Gallagher argues that the State failed to rebut his statutory defense under Indiana Code section 35–48–4–16(b). He claims that the State failed to rebut his defense under subsection (b) that no children were present at the school at the time of the drug transaction and that he was only within 1,000 feet of the school for a brief period of time. Both parties seem to agree that the record established that no children were present at or within 1,000 feet of St. John's school at the time of the transaction as it transpired at approximately 3:00 a.m., and St. John's is a day school.

The term "briefly" is not defined by Indiana Code section 35–48–4–16. Undefined words in a statute are usually given their plain, ordinary, and usual meaning. *Weideman v. State*, 890 N.E.2d 28, 32 (Ind.Ct.App.2008) (citing Ind.Code § 1–1–4–1(c)). "Courts may consult English language dictionaries to ascertain the plain and ordinary meaning of a statutory term." *Id.* (citing *Stratton v. State*, 791 N.E.2d 220, 224 (Ind.Ct.App.2003), *trans. denied* ). The word "brief" is relevantly defined as "short in duration, extent, or length," while "briefly" is relevantly defined as "short in time." Merriam Web-

ster's Collegiate Dictionary 143 (10th ed.1994).

■ Indiana Code § 35–48–4–1(b)(3)(B) elevates dealing in cocaine or narcotics to a class A felony if the transaction occurs within 1,000 feet of, among other things, school property. The purpose of this statute is to protect children. Similarly, the General Assembly sought fit to provide a defense that the defendant was only briefly within 1,000 feet of school property and no children were present when the transaction took place, thereby lowering the offense to a class B felony, because the reason for the harsher penalty—presence of children or a significant risk thereof—did not exist.

Here, it is uncontroverted that the transaction lasted, at most, for twenty minutes, took place at 3:00 a.m., and took place in a location where no children were present. Convicting Gallagher of a class A felony does not comport with the purpose of the statute. Here, as a matter of law, the transaction was brief and, consequently, the State failed to rebut Gallagher's defense. While under a different set of circumstances, a twenty-minute transaction could fall under the category of a class A felony because of the proximity of children or the potential for contact with youth, that is not the case here. Therefore, we reverse and remand with instructions to enter a conviction for dealing in a schedule II controlled substance as a class B felony and resentence Gallagher accordingly.

## II. Discovery Violation

■ Gallagher argues that the trial court erred when it admitted the audio recording of the drug transaction because the copy sought to be admitted at the trial was of a better quality than the one given to Gallagher. He contends that the copy that was given to him through discovery was inaudible and that he formed his trial

strategy around this fact. When the State sought to admit a copy of the recording, which Gallagher claims was of better quality than his copy, at trial, he asserts it was too late to cure the prejudice that resulted.

■ Our Supreme Court has set forth the proper roles of trial and appellate courts with regard to the resolution of discovery disputes:

"A trial judge has the responsibility to direct the trial in a manner that facilitates the ascertainment of truth, ensures fairness, and obtains economy of time and effort commensurate with the rights of society and the criminal defendant. Where there has been a failure to comply with discovery procedures, the trial judge is usually in the best position to determine the dictates of fundamental fairness and whether any resulting harm can be eliminated or satisfactorily alleviated.... The trial court must be given wide discretionary latitude in discovery matters since it has the duty to promote the discovery of truth and to guide and control the proceedings, and will be granted deference in assessing what constitutes substantial compliance with discovery orders. Absent clear error and resulting prejudice, the trial court's determinations as to violations and sanctions should not be overturned."

*Fosha v. State*, 747 N.E.2d 549, 553–54 (Ind.2001) (quoting *Cliver v. State*, 666 N.E.2d 59, 64 (Ind.1996)), *overruled on other grounds by Gutermuth v. State*, 868 N.E.2d 427 (Ind.2007). If remedial measures are warranted, a continuance is usually the proper remedy, but exclusion of evidence may be appropriate where the violation has been flagrant and deliberate, or so misleading or in such bad faith as to impair the right to a fair trial. *State v. Friday*, 842 N.E.2d 835, 841 (Ind.Ct.App. 2006).

Here, the State provided Gallagher with a copy of the audio recording pursuant to his discovery request. On April 10, 2007, Gallagher moved for an order to permit him to review the original digital recording because he contended that the copy provided to him was "of very poor quality" and that a review of the original was necessary "to more clearly hear the dialogue." *Appellant's App.* at 106. Gallagher also requested that the recording be transcribed, and the trial court granted both requests. In response to the trial court's grant of Gallagher's request, the State made another hard copy of the original recording, which was located on a computer at the Sheriff's Department. When the recording was offered at trial, Gallagher objected, claiming he had never been given the original for review and that the copy he received was "barely audible." *Tr.* at 214. The deputy prosecutor told the trial court that he had listened to the copy and stated that it was "identical, the quality is identical, it's the same tape...." *Tr.* at 207. Gallagher admitted that he had been provided with an accurate transcript of the recording, and he was allowed to listen to the actual recording that the State was seeking to admit into evidence during an overnight recess. He never requested a continuance nor did he offer his copy of the recording into evidence.

■ As a general proposition, when a remedial measure is warranted, a continuance is usually a proper remedy. *Lindsey v. State*, 877 N.E.2d 190, 196 (Ind.Ct.App. 2007), *trans. denied* (2008). A defendant will waive any alleged error regarding noncompliance with the trial court's discovery order by failing to request a continuance. *Id.* Although Gallagher argued at trial that he was prejudiced in his trial strategy because the copy of the recording he was provided was of a poorer quality than the one sought to be introduced, he

did not request a continuance to reevaluate and alter his trial strategy. Therefore, he has waived this issue.

■ Waiver notwithstanding, Gallagher's argument still fails. "Exclusion of evidence as a remedy for a discovery violation is only proper where there is a showing that the State's actions were deliberate or otherwise reprehensible, and this conduct prevented the defendant from receiving a fair trial." *Warren v. State*, 725 N.E.2d 828, 832 (Ind.2000). While we are troubled by any action by the State to provide a copy of the recording to the defendant that was much less clear than one introduced at trial, there was no showing that the State's actions were done deliberately. The trial court was in the best position to determine this issue, and it found that the transcript was consistent with the recording sought to be introduced and that there was no prejudice to Gallagher that rose to the level that the recording should be excluded. *Tr.* at 230. While we caution the State to be more diligent, we cannot say that the trial court erred when it allowed the recording to be admitted into evidence.

■ Additionally, Gallagher argues that the recording should have been excluded because it contained evidence of other bad acts, which were inadmissible. He claims that this evidence painted him as a regular drug dealer who got high on cocaine and mistreated his own baby to get high. He contends that the evidence of other bad acts were so prejudicial that a limiting instruction would not cure the harm done by admitting the evidence.

■ Indiana Evidence Rule 404(b) states in pertinent part:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however-

er, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident....

"In assessing the admissibility of 404(b) evidence, we determine whether the evidence is relevant to a matter at issue other then the defendant's propensity to commit the charged act, and we balance the probative value of the evidence against its prejudicial effect." *Smith v. State*, 891 N.E.2d 163, 171 (Ind.Ct.App.2008), *trans. denied.*

Here, the recording of the drug transaction between Gallagher and Goodpaster contained evidence of other wrongdoing by Gallagher. Specifically, during the recording Gallagher discussed other drug activity, such as stating that he could get a hundred pills for Goodpaster the next day, referring to a previous occasion when Gallagher had done cocaine, and telling Goodpaster, in response to a question about making money off of Oxycontin pills, that he had not "messed with them for five days, cuz I've been broke ... we're bottom barrel broke, man, we can't buy the baby f * * * in diapers and formula." *State's Ex.* 9–A at 16–17. After Gallagher objected to the recording under Evidence Rule 404(b), the trial court found that the evidence contained on the recording was relevant to show Gallagher's motive, intent, preparation, plan, knowledge, and absence of mistake. After the evidence was admitted, the trial court gave a limiting instruction.

■ We note that Gallagher contended at trial that he had been entrapped into delivering the pills to Goodpaster behind the Beyer's Pharmacy, which was where the transaction occurred. The evidence contained in the recording that Gallagher was involved in the drug business was relevant to rebut this defense because it made it more likely than not that Gallagher, and not Goodpaster, controlled the circumstances and location of the drug

transaction. Additionally, Gallagher also claimed that the women present in the car with him were the ones substantially responsible for selling the drugs, and the evidence was relevant to rebut this by showing his motive, intent, preparation, plan, knowledge, and absence of mistake. Further, the trial court gave a limiting instruction to the jury that informed them that they should only consider the evidence for the limited purpose for which it was received. "When a limiting instruction is given that certain evidence may be considered for only a particular purpose, the law will presume that the jury will follow the trial court's admonitions." *Ware v. State,* 816 N.E.2d 1167, 1176 (Ind. Ct.App.2004). We therefore conclude that the trial court did not abuse its discretion when it allowed the evidence to be admitted into evidence.

### III. Jury Instruction

■■■■■■ "The purpose of an instruction is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict." *Snell v. State,* 866 N.E.2d 392, 396 (Ind.Ct.App.2007). The manner of instructing the jury is generally within the sound discretion of the trial court, and we review its decision only for an abuse of that discretion. *Boney v. State,* 880 N.E.2d 279, 293 (Ind.Ct.App.2008). When reviewing a challenge to a jury instruction, we consider whether: (1) the instruction is a correct statement of the law; (2) there was evidence in the record to support giving the instruction; and (3) the substance of the instruction was covered by other instructions given by the trial court. *Id.* The ruling of the trial court will not be reversed unless the instructions, taken as a whole, misstate the law or mislead the jury. *Snell,* 866 N.E.2d at 396. In order to be entitled to a reversal, the defendant

must affirmatively show that the erroneous instruction prejudiced his substantial rights. *Id.*

Gallagher argues that the trial court abused its discretion when it gave its final instruction on accomplice liability. He contends that the instruction given by the trial court was improperly given because it was an incomplete statement of the law and could have unduly confused the jury. He claims this is because the instruction given did not completely instruct the jury on his knowledge and conduct as it related to the actions of the others in the car the night of the drug transaction.

The trial court gave the jury the following instruction on aiding and inducing an offense over Gallagher's objection:

A person who knowingly or intentionally:

(1) Aids, induces, or causes another person to commit an offense;

(2) Commits that offense, even if the other person:

1. Has not been prosecuted for the offense;

2. Has not been convicted of the offense;

3. Has been acquitted of the offense.

*Appellant's App.* at 208. Gallagher objected to this instruction, claiming that it inappropriately injected "a new element into this case, it's going to cause confusion." *Tr.* at 314. The trial court overruled this objection and read the instruction to the jury.

Initially, we note that, at trial, Gallagher objected to the trial court's final instruction that dealt with aiding and inducing by stating that "there's been no mention of that throughout the entire proceeding and that it's wholly inappropriate to inject a new element into this case, it's going to cause confusion." *Id.* However, on appeal,

Gallagher is arguing that the trial court abused its discretion in giving the instruction because it failed to properly instruct the jury on his knowledge and conduct as it related to the actions of the others in the car during the drug buy, which resulted in an incomplete and misleading instruction. Additionally, when he objected to the instruction at trial, Gallagher did not tender an alternate instruction. For the first time, he now claims that the Indiana Pattern Jury Instruction on aiding and inducing would have been a more complete instruction to give the jury.

 "No party may claim as error the giving of an instruction unless he objects thereto ... stating distinctly the matter to which he objects and the grounds of his objection." Ind. Trial Rule 51(C). "When objecting at trial to the *giving* of an instruction, a party is not required to tender an alternative instruction if the party's objection is sufficiently clear and specific to inform the trial court of the claimed error and to prevent inadvertent error." *Corbett v. State,* 764 N.E.2d 622, 629 (Ind. 2002) (citing *Mitchell v. State,* 742 N.E.2d 953, 955 (Ind.2001)) (emphasis in original). A defendant's argument is forfeited on appeal if he failed to make it at trial. *Berry v. State,* 703 N.E.2d 154, 160 (Ind.1998). As such, since Gallagher failed to make the argument at trial that he is attempting to raise on appeal, he has forfeited such argument.

Affirmed in part, reversed in part, and remanded with instructions.

BAKER, C.J., and NAJAM, J., concur.