Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Mar 20 2012, 9:27 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**J. CLAYTON MILLER**
Jordan Law, LLC
Richmond, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JODI KATHRYN STEIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

JAMES N. HAMILTON,                      )
                                        )
    Appellant-Defendant,          )
                                        )
       vs.                    )    No. 89A04-1103-CR-134
                                        )
STATE OF INDIANA,                       )
                                        )
    Appellee-Plaintiff.           )

APPEAL FROM THE WAYNE SUPERIOR COURT
The Honorable Gregory A. Horn, Judge
Cause No. 89D02-1010-FD-90[1]

**March 20, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

---

[1] Hamilton's case was originally filed in Wayne Superior Court No. I under Cause Number 89D01-0909-FD-110. The case was transferred to Wayne Superior Court No. II, and the Cause Number was changed to 89D02-1010-FD-90.

James N. Hamilton appeals his convictions following a jury trial for two counts of receiving stolen property,[2] each as a Class D felony. On appeal, Hamilton raises the following issues, which we consolidate and restate as:

I.      Whether the State presented sufficient evidence to support Hamilton's convictions; and

II.     Whether the trial court erred by denying Hamilton's oral motions for mistrial and for continuance based upon the State's discovery violation.

We affirm.

## FACTS AND PROCEDURAL HISTORY

On the evening of August 7, 2009, Linda ("Linda") and Larry Hays returned to their home in Richmond, Indiana, after an overnight trip, and found that a big stone had been thrown through the glass in their back door and that their bedroom had been ransacked. The Hayses discovered that numerous items of Linda's jewelry had been stolen, including a gold butterfly pinkie ring and a gold rope chain necklace. Richmond Police Detective Kenneth Powell ("Detective Powell"), who was assigned to investigate the burglary, provided a description of the stolen items to several pawn shops and secondhand stores in the Richmond area, including Foster's E Street Gallery ("Foster's Gallery"). Foster's Gallery, which is owned and operated by Charles Foster ("Foster") and his wife, Beth, is located just a few minutes' drive away from the Hayses' home.

Five days after the burglary was discovered, on August 12, 2009, Hamilton entered Foster's Gallery and offered to sell Foster three pieces of jewelry—the gold

---

[2] *See* Ind. Code § 35-43-4-2.

butterfly pinkie ring, the gold rope chain necklace, and a gold ring with an indecipherable name on it. *Tr.* at 206. Foster agreed to buy the jewelry and paid Hamilton seventy-seven dollars, in the form of a check made out to Hamilton. After Hamilton left Foster's Gallery, Foster checked the jewelry against a list of stolen items and discovered that the butterfly pinkie ring and the gold rope chain necklace were on the list.

Foster contacted the Richmond Police Department. When Detective Powell arrived at Foster's Gallery, Foster showed the detective the three pieces of jewelry. From a photo array prepared by Detective Powell, Foster was able to identify Hamilton as the man from whom he had purchased the jewelry. Subsequently, Linda positively identified the butterfly ring as being hers and stated that the necklace was "exactly like" her gold rope chain necklace that had been stolen. *Id.* at 167. Linda, however, did not recognize the second gold ring. Detective Powell testified that the second gold ring appeared to be a "female's ring," and while he could not decipher the name inscribed in the ring, the lettering seemed to be "N-A-R-I-D," which was not defendant's name. *Id.* at 206. At trial, Linda testified that she did not give anyone permission or authorization to either take or sell her jewelry. *Id.* at 169. The State charged Hamilton with two counts of Class D felony receiving stolen property.[3]

At trial, the State sought to introduce into evidence the cancelled check that Foster used to pay Hamilton for the jewelry. Defense counsel objected on the basis that the State had failed to produce the check during discovery. The trial court sustained the

---

[3] The State alleged that Hamilton was an habitual offender, but dismissed that allegation prior to trial. Additionally, in October 2009, the State added a charge of Class A misdemeanor trespass, however, in August 2010, the trial court severed that count for trial.

objection and excluded the check. Later, when Detective Powell testified that he had received a copy of the check from Foster, defense counsel again objected, contending that this testimony bolstered Foster's testimony that he, in fact, paid Hamilton for the jewelry. Defense counsel moved for mistrial. The trial court denied Hamilton's motion for mistrial but granted Hamilton a continuance until the next afternoon. The following day, Hamilton again requested a continuance to obtain handwriting analysis of the signature on the back of the check. The trial court denied Hamilton's request for a continuance and affirmed its ruling that the check was excluded from evidence. The jury found Hamilton guilty as charged, and he was convicted accordingly. He now appeals.

## DISCUSSION AND DECISION

### I.     Sufficiency of the Evidence

Hamilton first challenges the sufficiency of the evidence supporting his convictions for receiving stolen property. When reviewing the sufficiency of the evidence to support a conviction, "appellate courts must consider only the probative evidence and reasonable inferences *supporting* the verdict." *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007) (quoting *McHenry v. State,* 820 N.E.2d 124, 126 (Ind. 2005)). "It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction." *Id*. We affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." *Id*. (citing *Jenkins v. State,* 726 N.E.2d 268, 270 (Ind. 2000)). It is therefore not necessary that the evidence "overcome every reasonable hypothesis of innocence." *Id*. at 147 (citing *Moore v. State,* 652 N.E.2d 53, 55 (Ind.

4

1995)).  "'[T]he evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.'" *Id*. (quoting *Pickens v. State,* 751 N.E.2d 331, 334 (Ind. Ct. App. 2001)).

To convict Hamilton of Class D felony receiving stolen property, the State was required to prove beyond a reasonable double that Hamilton knowingly or intentionally received, retained, or disposed of the property of another person that had been the subject of a theft.  Ind. Code § 35-43-4-2(b).  Hamilton was charged with two counts of receiving stolen property—one for the gold butterfly ring and one for the gold rope chain necklace—as follows:

> . . . on or about August 12, 2009, in Wayne County, State of Indiana, James N. Hamilton did knowingly or intentionally dispose of property that had been the subject of Theft . . . .

*Appellant's App.* at 11, 23.  In addition to proving the explicit elements of the crime, the State was also required to prove beyond a reasonable doubt that Hamilton knew that the property was stolen.  *Fortson v. State,* 919 N.E.2d 1136, 1139 (Ind. 2010); *Gibson v. State*, 643 N.E.2d 885, 887 (Ind. 1994); *see* Ind. Code § 35–41–2–2(d) ("Unless the statute defining the offense provides otherwise, if a kind of culpability is required for commission of an offense, it is required with respect to every material element of the prohibited conduct.").

Witness testimony revealed that the Hayses were away from their Richmond, Indiana home for one night, and returned on August 7, 2009 to find that their house had been broken into and items had been stolen.  In their report to the police, the Hayses noted that the stolen items included, among other things, Linda's gold butterfly pinkie

5

ring and her gold rope chain necklace. Five days later, on August 12, 2009, Hamilton entered Foster's Gallery. Foster's Gallery "[b]uy[s] and sell[s] antiques, gold, silver, coins, [and] art," and is located "a few minutes['] drive from where [the Hayses] house is located." *Tr*. at 166, 175. Foster admitted that "from time to time . . . the police contact [him] in cases in which somebody has attempted or has in fact sold stolen property." *Id*. at 177.

Hamilton offered to sell Foster three pieces of gold jewelry—a ten-karat gold butterfly pinkie ring, a fourteen-karat gold rope chain necklace, and a ten-karat gold ring with an indecipherable name on it. *Id*. at 180, 206. Foster agreed to buy the jewelry and paid Hamilton seventy-seven dollars, in the form of a check made out to Hamilton. After Hamilton left Foster's Gallery, Foster checked the jewelry against a list of stolen items and discovered that the butterfly pinkie ring and the gold rope chain necklace were on the list. Linda positively identified the gold butterfly pinkie ring as the one that was stolen, and identified the necklace, although devoid of identifying marks, as being "exactly like" her gold rope chain necklace that had been stolen. *Id*. at 167. At trial, Linda testified that she did not give anyone permission or authorization to either take or sell her jewelry. *Id*. at 169. Considering the explicit elements of the crime, this was sufficient evidence from which the jury could reasonably conclude that the butterfly ring and necklace were stolen from Linda and that Hamilton disposed of the property of another person that had been the subject of a theft. Ind. Code § 35-43-4-2(b).

The issue that remains, however, is whether the evidence was sufficient to prove that Hamilton knew that the butterfly ring and the gold rope chain necklace had been

6

stolen. Citing to our Supreme Court's holding in *Fortson*, Hamilton contends that there was insufficient evidence to support his conviction for two counts of receiving stolen property. Particularly, he cites to the following language: "Knowledge that the property is stolen may be established by circumstantial evidence; *however, knowledge of the stolen character of the property may not be inferred solely from the unexplained possession of recently stolen property.*" *Appellant's Br.* at 9 (quoting *Fortson*, 919 N.E.2d at 1143) (emphasis added). This language, while certainly pertinent to our analysis, is not new to the analysis of sufficiency in the context of receiving stolen property. Instead, it is a reiteration of language that has existed in this area for years.[4] *See Johnson v. State,* 441 N.E.2d 1015, 1017 (Ind. Ct. App. 1982) (knowledge of stolen character of property in conviction for receiving stolen property may not be inferred solely from unexplained possession of recently stolen property); *Anderson v. State*, 406 N.E.2d 351, 353-54 (Ind. Ct. App. 1980) (same); *Miller v. State*, 250 Ind. 338, 344, 236 N.E.2d 173, 176 (1968) (same).

---

[4] The importance of our Supreme Court's holding in *Fortson* is its impact on the law concerning sufficiency of the evidence in the context of the crime of *theft* and not receiving stolen property.

> In *Fortson,* our [S]upreme [C]ourt considered the possession of a recently stolen vehicle in the context of a receiving stolen property conviction. The [C]ourt noted that, since 1970, "our courts have adhered to some variation of the rule that the unexplained possession of recently stolen property standing alone is sufficient to sustain a verdict of guilty of theft." *Fortson,* 919 N.E.2d at 1142. The [*Fortson*] [C]ourt abandoned the "so-called mere possession rule" and held that "the mere unexplained possession of recently stolen property standing alone does not automatically support a conviction for theft." *Id.* at 1143.

> . . . . Thus, our [S]upreme [C]ourt has indicated that the trier of fact must assess all of the evidence instead of focusing upon one piece of evidence, such as possession of recently stolen property. Similarly, here, a trier of fact should assess all of the evidence, rather than focusing on evidence of the defendant's exclusive possession of the property.

*Donovan v. State*, 937 N.E.2d 1223, 1226 (Ind. Ct. App. 2010), *trans. denied* (2011).

7

Hamilton first contends that the evidence is insufficient because "[n]o evidence exists nor was any offered to the jury showing a link between the Appellant and the Hays[es]' burglary." *Appellant's Br.* at 8. While interesting to know, this information was not necessary to convict Hamilton of receiving stolen property. Our Supreme Court has held that a conviction for receiving stolen property "does not require as an element of the offense any consideration of who may have actually stolen the property." *Gibson*, 643 N.E.2d at 888.

Hamilton next contends that "no evidence was presented showing how the Appellant came into possession of Linda Hays'[s] butterfly ring and the gold necklace . . . or even what occurred with respect to the jewelry between the burglary and its sale at Foster's Gallery." *Appellant's Br.* at 8-9. Hamilton was charged with "knowingly or intentionally dispos[ing] of property that had been the subject of Theft." *Appellant's App.* at 11. While it was important for the State to prove that Hamilton disposed of property that he knew to be stolen, it was not an element of the crime that Hamilton knew from whom the property had been stolen.

As noted above, it was the State's burden to prove that Hamilton *knew* that the butterfly ring and the gold rope chain necklace had been stolen. Defense counsel emphasized this issue in its closing argument:

> Chuck Foster says that James Hamilton came into his place of business and sold him those two items of jewelry for Seventy-Seven Dollars, ($77.00). What does that prove? It proves that he possessed, that he disposed of that property. That's the element that it goes too [sic]. Mere possession. He was in possession. And we talked about before, the idea that someone is in possession of something is part of the case the State has to make. That they possessed it, that they disposed of it, that they transferred it, that they were

8

in possession of this property is part of the, one of the elements the State has to meet. But, they also have to prove that when they were in possession of it, when they did dispose of it, they had knowledge that it was the subject of a theft. So, you've used the fact of possession, the fact that he, that Chuck Foster says he walked in there with those rings, with that ring and that necklace. Let's say, okay, they've established that element. Disposed of a butterfly ring which was the property of Linda Hays. That's where it goes. It doesn't go to the final element, when James Hamilton knew the butterfly ring had been the subject of a theft. Mere possession does not equal knowledge. It doesn't equal proof of knowledge.

. . . .

The mere possession goes to prove what? That he possessed it, that he disposed of it. That's what the element it satisfies. You need to go above and beyond the act of possession to get to knowledge. You have to find other evidence to establish knowledge. And that's the evidence that the State did not present any of. None.

*Tr*. at 253-54.

Following closing argument, the jury was instructed: "A Defendant must not be convicted on suspicion or speculation." *Id*. at 272. "It is not enough for the State to show that the Defendant is probably guilty. On the other hand, there are very few things in this world that we know with absolute certainty, and in criminal cases the law does not require proof that overcomes every possible doubt." *Id*. at 273. "In determining the value to place upon a witness's testimony, some factors you may consider are . . . [y]our knowledge, experience, and common sense gained from day to day living." *Id*. at 275. "[A] person charged with the commission of a crime cannot be compelled to testify and is under no duty or obligation to do so. You must not speculate upon Defendant's reasons for not testifying." *Id*. at 276.

9

Foster positively identified Hamilton as the man who sold three pieces of jewelry to Foster's Gallery. Foster's Gallery is a resale shop that the police sometimes contact when they are looking for stolen jewelry. Foster's Gallery has purchased stolen jewelry in the past. Linda identified her butterfly ring as the one that was stolen and testified that the necklace was "exactly like" the one that was stolen. Jewelry is small and can be easily stolen and transferred to another without detection. Likewise, it can be easily concealed and readily sold, whether as jewelry or for its value as gold. Here, the jewelry was identified as being female jewelry; Hamilton was a man. Foster's Gallery was located just a few minutes' drive away from the Hayses' home. Foster paid Hamilton seventy-seven dollars for three items—a fourteen-karat gold rope necklace, and two ten-karat gold rings. Hamilton was not just in possession of the jewelry; instead, he possessed it and also sold the jewelry five days after it was stolen.

Our court has noted that "'[w]here the evidence of guilt is essentially circumstantial, the question for the reviewing court is whether reasonable minds could reach the inferences drawn by the jury; if so, there is sufficient evidence." *Jones v. State*, 924 N.E.2d 672, 674 (Ind. Ct. App. 2010) (quoting *Whitney v. State,* 726 N.E.2d 823, 825 (Ind. Ct. App. 2000)). The evidence that (1) Hamilton was in possession of the two stolen items a few days after they were stolen, (2) the stolen items were women's jewelry and Hamilton was a male, and (3) that Hamilton sold the items shortly after coming into possession of them was sufficient for the jury to infer that Hamilton knew the jewelry was stolen.

## II. Continuance and Mistrial

10

Hamilton next contends that it was error for the trial court to deny his oral motions for mistrial and for continuance. Specifically, he contends that the State's failure to provide defense counsel with Foster's cancelled check was a discovery violation that precluded Hamilton from choosing his own defense.

Our Supreme Court has set forth the proper roles of trial and appellate courts with regard to resolution of discovery disputes. *Lindsey v. State*, 877 N.E.2d 190, 195 (Ind. Ct. App. 2007), *trans. denied* (2008).

> A trial judge has the responsibility to direct the trial in a manner that facilitates the ascertainment of truth, ensures fairness, and obtains economy of time and effort commensurate with the rights of society and the criminal defendant. Where there has been a failure to comply with discovery procedures, the trial judge is usually in the best position to determine the dictates of fundamental fairness and whether any resulting harm can be eliminated or satisfactorily alleviated. Where remedial measures are warranted, a continuance is usually the proper remedy, but exclusion of evidence may be appropriate where the discovery non-compliance has been flagrant and deliberate, or so misleading or in such bad faith as to impair the right of fair trial. The trial court must be given wide discretionary latitude in discovery matters since it has the duty to promote the discovery of truth and to guide and control the proceedings, and will be granted deference in assessing what constitutes substantial compliance with discovery orders. Absent clear error and resulting prejudice, the trial court's determinations as to violations and sanctions should not be overturned.

*Id.* (quoting *Fosha v. State,* 747 N.E.2d 549, 553–54 (Ind. 2001), *overruled on other grounds by Gutermuth v. State,* 868 N.E.2d 427 (Ind. 2007)).

The circumstances under which Hamilton moved for mistrial were as follows. After the trial court sustained Hamilton's objection to the State's introduction into evidence of the cancelled check, Detective Powell, in response to questioning by the State, testified that Foster had supplied him with a copy of the cancelled check. *Tr.* at

208.  Defense counsel objected to this line of questioning and moved for mistrial.  *Id*. at 208-09.  Out of the presence of the jury, defense counsel explained that:  (1) the State's failure to supply Hamilton with a copy of the check substantially harmed him because, without it, the defense was "unable to prepare for [the] trial" or pursue "documentary evidence of this alleged transaction . . . by someone purporting to be James Neil Hamilton"; and (2) the evidence regarding the check bolstered Foster's testimony that he had, in fact, paid Hamilton for the jewelry by means of a check.  *Id*. at 208-09, 211, 212.

> The trial judge disagreed that a mistrial was warranted, stating:
>
> If this were an issue of identity I can definitely see the argument where it makes a greater difference.  But . . . when it's an issue of intent I fail to see how the disclosure, of [sic] the failure to disclose the check at this point warrants a mistrial.

*Id*. at 214.  The trial court recognized the State's failure to comply with discovery procedures and, while denying Hamilton's motion for mistrial, granted the remedial measure of allowing Hamilton a short continuance to investigate any issues concerning the check.  Hamilton accepted the offer.  *Id*. at 215.  Thereafter, the State offered to assist in the investigation, as follows:  "Your Honor, . . . Detective Powell will probably assist him in trying to obtain the information . . . .  I'll volunteer to track down whatever he's looking for, if he wants us to do that.  If he wants to do it himself, that's fine too."  *Id*. at 216.  Defense counsel accepted the State's offer.  *Id*.  We find no clear error or prejudice to Hamilton in the trial court's determination to deny Hamilton a mistrial under these circumstances.

12

When the trial resumed on the following day, Hamilton moved for continuance in order to have an expert analyze the handwriting on the check. *Id*. at 227. Presumably, defense counsel intended to again raise the issue of identity, i.e., that the check was cashed by "someone purporting to be James Neil Hamilton." *Id*. at 211.

In response to Hamilton's motion, the State argued, in pertinent part, as follows:

> I know we went over this yesterday . . . the objection that was raised by [defense counsel] as the Court will recall we attempted to introduce that into evidence, the photocopy of the . . . check when there was an objection made. And we had a dispute over that and the Court ultimately ruled that it was not going to be allowed into evidence. And, I wanted to bring to the Court's attention that, again, the State didn't bring that or admit that into evidence. We didn't provide it as an exhibit because I never thought identity was an issue in the case. I thought all the time it would be knowledge that we would have to be able to prove and frankly I didn't think that would be contested. Certainly if I would have thought the case would have depended on identity and they would have contested on that grounds then it would have been different, I agree with you.[5]

*Id*. at 228. The trial court, presumably agreeing with the State's reasoning, noted: "The Court at this time denies the Motion for Continuance and the Court's ruling with respect to the admission of the check remains, and will stand." *Id*. at 232.

In his brief, Hamilton does not cite to any prejudice that arose from the trial court's denial of his motion for continuance. Nor can this court find any. The investigation into the handwriting on the check could only have gone to the identity of the person who cashed the check—a matter irrelevant to the elements to be proven. Foster positively identified Hamilton as the person from whom he purchased two pieces

[5] The State also argued that its failure to produce the check did not constitute a discovery violation because the check was not evidence that fell within the discovery request. *Tr*. at 229. The trial court excluded the copy of the check from evidence upon a finding that the State committed a discovery violation. Because Hamilton would not have been prejudiced by the exclusion of the check from evidence, we do not address this issue.

13

of stolen jewelry. *Id*. at 187. On cross-examination, defense counsel questioned whether Foster wrote the check, but never questioned Foster's identification of Hamilton as being the one from whom Hamilton purchased the jewelry.

As our Supreme Court noted in *Fosha*, "[w]here there has been a failure to comply with discovery procedures, the trial judge is usually in the best position to determine the dictates of fundamental fairness and whether any resulting harm can be eliminated or satisfactorily alleviated." *Fosha*, 747 N.E.2d at 554. Here, upon finding a discovery violation, the trial court prevented the State from introducing a copy of the check into evidence. Thereafter, when Hamilton again complained about his lack of knowledge concerning the check, the trial court granted Hamilton a short continuance to investigate any issues concerning the check. "Absent clear error and resulting prejudice, the trial court's determinations as to violations and sanctions should not be overturned." *Id.* at 554. Here, we find no evidence of either trial court error or prejudice to the Hamilton.

Affirmed.

BRADFORD, J., concurs.

BARNES, J., dissents with separate opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JAMES N. HAMILTON, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 89A04-1103-CR-134 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

**BARNES, Judge, dissenting**

I respectfully dissent. Since our supreme court decided <u>Fortson</u>, I have presumed, I think correctly, that the burden of proof for the State in these sorts of cases has been clarified. <u>Fortson</u> emphasized that with respect to charges of either theft or receiving stolen property, the State must prove "something more than the mere unexplained possession of recently stolen property." <u>Fortson</u>, 919 N.E.2d at 1139. "'If the presumption is to be indulged that every person found in [the] possession of stolen goods knows them to be stolen, the state would be relieved of establishing the guilty knowledge, and the burden thrown on the defendant of establishing his innocence.'" <u>Id.</u> at 1140 (quoting <u>State v. Richmond</u>, 84 S.W. 880, 882-83 (Mo. 1904)). To support a finding of knowledge of the property's stolen character, it is not enough to establish that a

15

reasonable person would have known that the property had been the subject of theft; rather, there must be evidence that the defendant actually knew it had been the subject of theft. See Gibson, 643 N.E.2d at 888. "Possession of recently stolen property when joined with attempts at concealment, evasive or false statements, or an unusual manner of acquisition has been held sufficient to support a conviction for Receiving Stolen Property." Id.

In Fortson, our supreme court reversed a conviction for receiving stolen property where the defendant was found in possession of a stolen truck approximately seven hours after it was reported missing, but there was no evidence that the defendant attempted to conceal the truck, and he did not provide evasive answers to or resist or attempt to flee from the arresting police officers. Fortson, 919 N.E.2d at 1144. By contrast, in Donovan v. State, 937 N.E.2d 1223, 1226-27 (Ind. Ct. App. 2010), trans. denied, we affirmed a conviction for auto theft where a defendant was found in possession of the vehicle approximately seven to ten days after it went missing, but there was additional evidence indicating that the defendant knew the vehicle was stolen that was lacking in Fortson. Namely, the vehicle identification numbers had been scraped off the vehicle, the ignition had been "hot-wired," the defendant had no keys, license plate, or registration to the vehicle, and the defendant provided the name of a person from whom he supposedly obtained the vehicle but he was unable to provide contact information for that person.

Here, Hamilton brought these items into Foster's store five days after the burglary. With due respect to my colleagues, the rope necklace was not positively identified by Linda as hers. She stated that the necklace was "generic," lacking any unique

16

characteristics, and further admitted that she could not prove the necklace was hers. Tr. pp. 167-68. Thus, Hamilton sold one item belonging to the Hayses, one item definitely not belonging to them, and one item of uncertain origin.

I simply think this case mirrors Fortson. There is no evidence of the whereabouts of the property during the five days after the burglary, until Hamilton sold the items. There is no evidence of who committed the burglary. There is no evidence as to how Hamilton came into possession of the items. One of the three items sold by Hamilton to Foster was not identified as stolen property at all and the evidence as to the gold necklace is very uncertain. Hamilton did not attempt to sell any of the other jewelry missing from the Hayses' house. Foster's store was not "right next door" to the Hayses' house. There is nothing inherent in any of the items that would indicate they were stolen—unlike the vehicle in Donovan. There is no evidence that Hamilton made any evasive or false statements to Foster or the police regarding his possession of the items. There is no evidence that he attempted to conceal his possession of them, as he sold them to Foster under his real name. Hamilton apparently received a fair "meltdown" price for the items. Selling gold items for their "meltdown" value is hardly unusual, especially in these days of sky-high gold prices.

Based on Fortson, the fact that Hamilton may or even probably knew the items were stolen is not good enough. This is not hand grenades or horseshoes. The State had the burden of proving Hamilton's knowledge beyond a reasonable doubt. I do not believe that burden was met here and conclude there is insufficient evidence to support Hamilton's convictions.

17