Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT:

**KRISTIN A. MULHOLLAND**
Appellate Public Defender
Crown Point, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**GEORGE P. SHERMAN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| RALPH DENNIS GABRIEL, JR., | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 45A04-1311-CR-585 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable Salvador Vasquez, Judge
Cause No. 45G01-1103-FA-14

**June 30, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**VAIDIK, Chief Judge**

**Case Summary**

Piljo Piljagic agreed to help Alexandre Radis start a relationship with a woman for a large sum of money, which included a final payment of $8000. When Radis did not pay Piljagic, he and Ralph Dennis Gabriel, Jr., brutally beat and robbed Radis in his home. While attempting to flee the scene, Gabriel was captured by police and eventually pled guilty to Class B felony burglary pursuant to a plea agreement. Gabriel was sentenced to fourteen years imprisonment and now appeals arguing his sentence is inappropriate. We find that Gabriel's character and the nature of the offense support his fourteen-year sentence. We therefore affirm the trial court.

**Facts and Procedural History**

Radis and Piljagic entered into an agreement wherein Radis was to pay Piljagic a large sum of money, in installments, in exchange for Piljagic helping Radis start a relationship with a woman. Appellant's App. p. 52 (Stipulated Factual Basis). As part of the agreement, Radis was to pay Piljagic a final installment of $8000. *Id*. When Radis did not pay the final installment, Piljagic and Gabriel went to Radis's home in Crown Point, Indiana, to force Radis to pay the $8000 Piljagic felt he was entitled to. *Id*. On the night of March 20, 2011, Gabriel and Piljagic knocked on Radis's second-story apartment door; when Radis opened the door both men forced their way inside as Radis tried to keep them out. *Id*. Gabriel and Piljagic began punching and kicking Radis repeatedly. *Id*. Because Piljagic had been told that Radis kept cash in his apartment, he went searching while Gabriel continued beating Radis in his face and body and strangled him. *Id*. Piljagic found about $8000 in cash in Radis's closet and took the money. *Id*. at 52-53. Meanwhile, the

police arrived on the scene and knocked and announced their presence. *Id*. at 53. Upon hearing the police, Piljagic took the money and Radis's wallet and jumped out one of the apartment windows. *Id*. Piljagic landed on a lower roof and, in the process, dropped the money; he fled the scene and was not found that night. *Id*. When Gabriel heard the police arrive and knock, he stopped beating Radis and also jumped from an apartment window. *Id*. Gabriel grabbed some of the money Piljagic had dropped and attempted to flee. *Id*. But Gabriel had broken his leg as a result of the jump and did not make it very far; the police soon found him crawling through the apartment parking lot. *Id*. Radis was taken to the hospital and was found to have a broken eye socket, a broken rib, and a punctured and collapsed lung. *Id*. Radis thought he was going to die. Sent. Tr. p. 25.

The State charged Gabriel with Count I: Class A felony burglary; Count II: Class A felony robbery; Count III: Class B felony burglary; Count IV: Class B felony criminal confinement; Count V: Class B felony attempted aggravated battery; Count VI: Class C felony battery; and Count VII: Class D felony strangulation. Appellant's App. p. 23-24. In September 2013 Gabriel pled guilty to Count III pursuant to a plea agreement, which provided that his sentence would be capped at seventeen years and all other charges would be dismissed. *Id*. at 49-53. Although not part of his plea agreement, Gabriel paid $11,500 to Radis for his medical bills. Sent. Tr. p. 46.

At the sentencing hearing, the trial court found two mitigators. First, the court found that Gabriel had led a conviction-free life for a substantial time before the commission of this crime. Second, the court found that Gabriel had pled guilty and admitted responsibility; however, the court gave this mitigator minimal weight because the State

3

dismissed two Class A felony charges. *Id*. at 54. In aggravation, the trial court considered Gabriel's history of criminal convictions, including his 1989 second-degree murder and armed-robbery convictions from Cook County, Illinois, for which Gabriel received ten years imprisonment on each count. *Id*. at 54-55. These convictions involved Gabriel's participation in the beating-death of an off-duty police officer. *Id*. at 30. The court also found that the harm done substantially exceeded that which was necessary to satisfy the elements of a crime, specifically the injury to Radis, and that Gabriel had a violent and manipulative character. Appellant's App. p. 54-55. The court considered the severity of Radis's injuries, in that he suffered a broken eye socket, broken rib, and punctured and collapsed lung. *Id*. Last, the court considered Gabriel's numerous arrests in Cook County, Illinois, including six battery arrests. *Id*. Finding that each aggravating factor, standing alone, outweighed any mitigating factor, the trial court sentenced Gabriel to fourteen years imprisonment in the Department of Correction. *Id*.

Gabriel now appeals this sentence.

**Discussion and Decision**

Gabriel contends that his fourteen-year sentence is inappropriate given his character, the restitution he paid, and "the lesser role he played in the commission of the crime." Appellant's Br. p. 7. "The Indiana Constitution authorizes independent appellate review and revision of a trial court's sentencing decisions." *Brown v. State*, --- N.E.3d --- (Ind. 2014). "We implement this authority through Indiana Appellate Rule 7(B), which provides that we may revise a sentence authorized by statute if, after due consideration of the trial court's decision we find the sentence is inappropriate in light of the nature of the offense

4

and the character of the offender." *Id*. (quotations omitted). "We have long said that sentencing is principally a discretionary function in which the trial court's judgment should receive considerable deference." *Cardwell v. State*, 895 N.E.2d 1219, 1222 (Ind. 2008) (citing *Morgan v. State*, 675 N.E.2d 1067, 1072 (Ind. 1996)). In determining whether a sentence is appropriate the court looks at the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case. *Id*. at 1224. Gabriel bears the burden on appeal of persuading us that his sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

As to the nature of the offense, there is no dispute that Radis was brutally beaten and suffered a broken eye socket, broken rib, and collapsed and punctured lung. The beating was so severe that Radis believed he was going to die. Although Gabriel argues he had a "lesser role" in the commission of the crime, the evidence overwhelmingly supports his participation and guilt. While Piljagic searched Radis's apartment for the money he believed he was entitled to, Gabriel continued beating Radis. In fact, Gabriel did not stop beating Radis until he became aware that the police were present. During sentencing, the trial court stated "there's no doubt in my mind that you had a role, a clear role in the beating of this man." Sent. Tr. p. 54. Additionally, once the police arrived, Gabriel attempted to flee the scene with some of the money his accomplice had dropped during his own escape.

In evaluating Gabriel's character, this Court has stated that "[t]he significance of a criminal history in assessing a defendant's character is based on the gravity, nature, and number of prior offenses in relation to the current offense." *Boling v. State*, 982 N.E.2d

5

1055, 1060 (Ind. Ct. App. 2013) (citing *Rutherford v. State,* 866 N.E.2d 867, 874 (Ind. Ct. App. 2007)). Even a minor criminal history is a poor reflection of a defendant's character. *Id.* Gabriel has a lengthy arrest record that includes approximately fifteen arrests, including six for battery. *See* Pre-Sentence Report p. 4-7; *see also Pickens v. State*, 767 N.E.2d 530, 534 (Ind. 2002) (acknowledging that although a record of arrests does not establish the historical fact of previous criminal behavior, such a record does reveal to the court that later antisocial behavior by the defendant has not been deterred even after having been subject to police authority).

However, more telling of his character, Gabriel was convicted of second-degree murder and armed robbery in 1989 and was sentenced to ten years for each count. Pre-Sentence Report p. 4. These convictions involved the brutal beating-death of an off-duty police officer. Gabriel argues that because his murder and armed-robbery convictions occurred twenty-five years before this case, "such distant convictions should not weigh against [his] character." Appellant's Br. p. 10. However, a trial court must "consider the chronological remoteness of the convictions as well as the gravity and nature of the prior crime . . . as they relate to the current offense." *Haas v. State*, 849 N.E.2d 550, 556 (Ind. 2006). Although Gabriel's second-degree murder and armed-robbery convictions occured twenty-five years before this case, second-degree murder and armed robbery are closely related—in gravity and nature—to the beating and robbing of Radis. In sentencing Gabriel, the trial court acknowledged that it is normally "frowned upon" to use a conviction from twenty-five years ago, but here it was acceptable because:

> [T]here's a pattern of conduct . . . of what you have done between that incident twenty-five years ago . . . and what has occurred since that time[.]

6

> * * * * * If you [had done] nothing at all since that time period, no record, no arrest, nothing whatsoever, then it's absolutely improper for us to reach back that far. But of course, that's not you. What I see here is really a pattern of conduct, six times . . . you have been charged with battery.

Sent. Tr. p. 52.

We acknowledge that Gabriel pled guilty and paid $11,500 in restitution for Radis's medical bills. Gabriel argues that his remorse, shown by pleading guilty and paying restitution, is telling of his character. However, as the trial court stated, without his plea agreement, Gabriel "would have been looking at twenty to fifty years [in prison]." *Id.* at 57. Further, "[r]emorse, or lack thereof, by a defendant often is something that is better gauged by a trial judge who views and hears a defendant's apology and demeanor first hand and determines the defendant's credibility." *Gibson v. State*, 856 N.E.2d 142, 148 (Ind. Ct. App. 2006).

Last, Gabriel argues that his "medical condition and his requirement for ongoing treatment should be considered in evaluating the appropriateness of his sentence." Appellant's Br. p. 9. But these injuries were sustained when Gabriel attempted to flee from the police by jumping from a second-story window in Radis's apartment. Further, his assertion that he will not receive proper medical care in prison is unsupported by any evidence.

The sentence imposed by the trial court was within the seventeen-year cap agreed upon in Gabriel's plea agreement. Considering these facts and in light of the brutal nature of Gabriel's attack on Radis and his criminal character, Gabriel has failed to persuade us that his fourteen-year sentence is inappropriate.

Affirmed.

NAJAM, J., and BROWN, J., concur.